IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | |
| | ) | CASE NO. |
| TIMOTHY JERMAINE PATE, | ) | 1:18-cr-00045-RSB-BWC-1 |
| | ) | |
| Defendant. | ) | |

COMPETENCY HEARING
BEFORE THE HONORABLE BENJAMIN W. CHEESBRO
May 2, 2019; 10:30 a.m.
Savannah, Georgia

APPEARANCES:

For the Government:

CHRISTOPHER HOWARD, Esq.
U. S. Attorney's Office
22 Barnard Street
Suite 300
Savannah, Georgia 31412
(912) 652-4422
christopher.howard@usdoj.gov

For the Defendant:

JUSTIN D. MAINES, Esq.
Law Office of Justin Maines
2008 Whitaker Street
Savannah, Georgia 31401
(912) 358-8485
jd@thenyelawgroup.com

Reported by:

Debbie Gilbert, RPR, CCR
Official Court Reporter
801 Gloucester Street
Post Office Box 1894
Brunswick, GA 31521-1894
(912) 262-2608 or (912) 266-6006
debra_gilbert@gas.uscourts.gov

- - -

P R O C E E D I N G S

(Call to order at 10:30 a.m.)

THE COURT: Good morning, everyone.

SPEAKERS: Good morning, Your Honor.

THE COURT: Ms. Slater, please call the case.

THE CLERK: United States of America versus Timothy Pate, Chris Howard for the Government, Justin Maines for the Defense.

MR. HOWARD: Government is ready to proceed, Your Honor.

MR. MAINES: Your Honor, I'm hear on behalf of Mr. Pate. I'm ready to proceed.

THE COURT: All right.

THE DEFENDANT: This man is not my attorney. I have no contract with him, and I don't consent to these proceedings.

THE COURT: We're here today in a hearing regarding Mr. Pate's competency as well as his --

THE DEFENDANT: I shouldn't be here.

THE COURT: -- asserted insanity defense.

THE DEFENDANT: Actually I'm done here. I have no business here today. Anybody have any endorsements -- any discrepancy for me to endorse, I'll endorse. Other than that, I'm not contracting with anyone here today and this man does not represent me.

THE COURT: All right, Mr. Pate.

THE DEFENDANT: I'm not Timothy Jermaine Pate. I'm not

Timothy Jermaine Pate. I've gone through this crap over and over. I'm done here.

THE COURT: Sir?

THE DEFENDANT: I'm done here.

THE COURT: I understand that you have some strongly held beliefs about --

THE DEFENDANT: I do not consent.

THE COURT: -- The Court and its jurisdiction. Sir, could you please direct your attention up here?

THE DEFENDANT: No, I do not consent to your jurisdiction. I'm done here. I don't want to contract with anyone here today. This man is not my attorney.

THE COURT: We're going to go forward with this hearing.

THE DEFENDANT: I don't consent.

THE COURT: I understand. All right. We're going to go forward with this hearing now.

THE DEFENDANT: I don't consent.

THE COURT: Now, in the past, Mr. Pate has engaged in some disorderly and disruptive conduct during these hearings. We're going to endeavor today to go forward with the hearing with him here and present.

THE DEFENDANT: I don't consent.

THE COURT: He has a right to be here and participate in this proceeding.

THE DEFENDANT: I don't consent.

THE COURT: We're going to extend every opportunity for him to remain here. If he engages in disruptive --

THE DEFENDANT: I don't consent.

THE COURT: -- and disorderly conduct, he will be removed from the courtroom.

THE DEFENDANT: Remove me. I don't consent.

THE COURT: We have set up facilities in the holding cell whereby he can hear and observe these proceedings but not disrupt them.

THE DEFENDANT: Whether I'm here or there or wherever I'm at, I do not consent.

THE COURT: Mr. Pate, please look up here.

Mr. Pate, I understand that you have disagreed with The Court's jurisdiction, that you have some perhaps mistaken but strongly held beliefs, but those beliefs that you have do not require you to disrupt these proceedings.

THE DEFENDANT: I do not consent to your jurisdiction.

THE COURT: Sir, you've stated that. There's a court reporter here who has taken that down --

THE DEFENDANT: Okay, and I'm done with that.

THE COURT: -- and recorded that. No, you're not done here, sir.

THE DEFENDANT: Yes, I am. I'm done. You're not my creator. I'm done here.

THE COURT: Now, I understand that a stipulation has

been filed whereby counsel for the Government as well as counsel for Mr. Pate have stipulated to the factual conclusions by the Bureau of Prisons examiner as well as the conclusion that Mr. Pate is competent and that he was not insane at the time of the commission of the purported acts in this case.

Now, given the circumstances, though, I've nonetheless decided to conduct a hearing on Mr. Pate's competency here today just to ensure that there is no an additional argument or evidence to be submitted on this matter.

I'm going to briefly recap where we are and what brought us here today. In October of 2018, Mr. Pate's appointed counsel, Mr. Maines, moved to have Mr. Pate's competency evaluated. That was supplemented with a request to determine whether Mr. Pate was insane at the time of the commission of the offense. The Court granted both requests, and the Bureau of Prisons conducted an evaluation between December 2018 and February 2019.

THE DEFENDANT: I do not consent to this hearing.

THE COURT: Dr. Lisa Feldman, a forensic psychologist, conducted the exam --

THE DEFENDANT: I do not --

THE COURT: -- and issued a report. Mr. Pate --

THE DEFENDANT: I do not remember talking to her.

THE COURT: Mr. Pate, you'll have an opportunity to speak, and if you need to submit information to The Court, you

will be able to do so, but at this time please don't speak over The Court so we can get this reported right.

THE DEFENDANT: Sir, I do not consent to this hearing.

THE COURT: You've stated that, sir.

THE DEFENDANT: Well, I'm done here.

THE COURT: You're not done here, sir.

THE DEFENDANT: I'm done today.

THE COURT: We're going to go forward.

THE DEFENDANT: I'm done here.

THE COURT: Dr. Feldman issued a report in March of 2019, which was filed in this case under seal and is included in the electronic docket at Entry Number 46.

Counsel for the Government and counsel for Mr. Pate received a copy of the report. The conclusions of that report are that Mr. Pate is competent, was not insane at the time of the commission of the offense, and the report noted that Mr. Pate would not agree to cooperate with the evaluation but that the examiner was nonetheless able to form conclusions after extensive observations and review of certain records.

Dr. Feldman's specific conclusions were that Mr. Pate meets the criteria for adult antisocial behavior but he was not diagnosed with antisocial personality disorder.

The Court noted that Mr. Pate has what we're referring to as peculiar ideas about the law, the jurisdiction of the courts and his current legal status but that those were not

based on any delusions that he held but rather were a volitional attempt to thwart the current legal proceedings. Specifically Dr. Feldman found that --

THE DEFENDANT: I do not consent, and I'm not Mr. Pate in all capital letters. I'm not a corporation. I'm a human being.

THE COURT: All right, Mr. Pate.

The report found that Mr. Pate's defense strategies are not believed to be based on confused or delusional thinking or any symptoms or an active phase of mental illness. The report further concluded that he is at this time competent to stand trial in this case.

Regarding the request for an evaluation as to his insanity at the time of the commission of the offense, Dr. Feldman concluded that Mr. Pate was not suffering from the symptoms of a mental disorder or a disease that was causally related to the alleged offense that would have resulted in his inability to appreciate the nature and quality of his wrongful acts.

As I mentioned, the parties filed a stipulation that the report is factually correct and may be relied on in forming an opinion --

THE DEFENDANT: I don't argue that. I don't argue that.

THE COURT: -- on Mr. Pate's competency and that the conclusions --

THE DEFENDANT: And I don't consent --

THE COURT: -- are uncontested.

THE DEFENDANT: -- to these hearing. I don't consent to this hearing. I'm not a corporation. I'm not a fiction.

THE COURT: As I said, I've set this down for a hearing nonetheless to make sure there is nothing else to be submitted. In particular, I also set this down because Mr. Pate in previous hearings has indicated that he objects to having appointed counsel, but he refuses to participate in a Faretta hearing to determine whether he could represent himself.

So I felt it was appropriate to have a in-person hearing.

Now, Mr. Howard, is there anything additional from the Government on this matter?

MR. HOWARD: Your Honor, not with respect to the competency evaluation and the stipulation that we filed. There are some other housekeeping matters that we can take up later but not with respect to the competency.

THE COURT: We will come back to those before the conclusion of the hearing.

Mr. Maines, anything further --

MR. MAINES: Your Honor, just to perfect the record with respect to my stipulation to Dr. Feldman's report, which I do agree with her conclusions, I specifically spoke to Dr. Feldman about my observations and interactions with Mr. Pate and it

appears she incorporated those observations in her analysis. I also relayed conversations I had with Mr. Pate's daughter who was present at the time of Mr. Pate's arrest.

It appears from my review of her report that she also incorporated -- or it appears that she took that into consideration, my recollection of conversations with his daughter as well, so, Your Honor, I do feel like Ms. Feldman did receive defense information and considered that in her analysis as well and to make sure The Court is aware that this was not just me reviewing the report, I actively participated or tried to participate in Dr. Feldman's analysis and conclusions and I feel like she did consider those things.

THE COURT: All right, and I'll also note for the record that Dr. Feldman mentioned in her report that in addition to three months of observations the examiner also was able to observe telephone conversations that Mr. Pate had with family members and additionally looked at outside records as well regarding Mr. Pate's history and reached those conclusions based on a holistic view of all of those considerations.

Well, I will follow up with a written order regarding Mr. Pate's competency and the asserted insanity defense regarding his mental state at the time of the offense.

Mr. Howard, what are the other housekeeping matters?

MR. HOWARD: Your Honor, last November, Your Honor issued an order regarding Mr. Pate's limitations on certain mail

privileges, and it provided that -- it limited his mail until that competency evaluation has been completed, so I don't know if Your Honor wants to revisit it.

I think that -- and I would request -- that those same limitations be extended and the same process be put in place through the continuation of this case, and the second request is I don't think that those records that he's sending either to The Court or to third parties are privileged, so we would ask for the opportunity at some point to review those files, if any, that are being maintained by defense counsel.

THE COURT: I'll take the request regarding mail privileges under advisement. Mr. Howard, more specific on the materials that you're talking about that were sent by Mr. Pate, are you referring to communications to family members or --

MR. HOWARD: Well, any correspondence to The Court or to third parties that, because of The Court's order, have been routed to defense counsel. I certainly do not want any communications between him and his counsel or discussing any privileged matter, but anything that's not privileged, given his history in this case and the relevancy of those filings, we would like the opportunity at some point before trial to review those.

THE COURT: Let me be clear on part of that, which is that anything that's submitted to The Court has been docketed in the case, so at this time there is nothing that's been provided

directly to The Court which is not included in the electronic docket. Those are typically docketed as letters rather than motions given that Mr. Pate is still represented by counsel in this case. The second part of that is any additional communications that have been received by Mr. Maines pursuant to The Court's previous order.

Mr. Maines, regarding the question of extending the limitation of Mr. Pate's mail privileges, do you have a position on that?

MR. MAINES: Your Honor, I have no objection to continuing to limit his mail privileges. That's the first I had heard about the Government's intent to inspect materials that were intercepted or forwarded to my office pursuant to that order.

I don't know how to respond off the top of my head to that. It's kind of a tricky situation. So as far as the order -- I would ask that the order be limited to the -- basically the same language as the prior order about mail privileges.

With respect to any Government inspection of my file and those materials, I think that would be a separate issue. I do see his point, though, because these were not privileged communications. They were just forwarded to me pursuant to the order, so I do think there's a good-faith basis to inspect those records, but that's the first I've heard of that. It's pretty

creative by the Government and I just don't know how to respond to it.

THE COURT: Given that we're having a hearing and request has just been made, I will not make any determination on that. I think, Mr. Maines, at a minimum you can go back and take a look at any communications and review those and make a determination.

If you have an objection to the request, you can file that on the record.

MR. MAINES: Yes, sir.

THE COURT: Or if you are able to work out an agreement that will resolve the matter entirely.

MR. MAINES: Yes, sir, I will endeavor to do that.

THE COURT: Mr. Howard, is there anything else?

MR. HOWARD: No, Your Honor. Just so I understand the order directed the clerk not to docket any submissions by Mr. Pate, and I guess, given that fact, that there has not been anything docketed is a reflection that nothing has been sent to The Court?

THE COURT: That's my understanding as well.

MR. HOWARD: Okay.

THE COURT: And I believe the order went further and asked Mr. Maines to retain possession of any communications so...

MR. HOWARD: Correct.

THE COURT: All right. Mr. Maines, anything further as to Mr. Pate?

MR. MAINES: No, Your Honor. I do have those -- I mean, I have a couple of those communications in my possession, but, no, Your Honor, I will make sure to continue possession of those, any materials he files or attempts to file.

THE COURT: Well, as I explained earlier, I will issue a written ruling regarding Mr. Pate's competency and the insanity defense, but given the circumstances, it's almost guaranteed that he will be determined to be competent and was not insane at the time of the commission of the offense.

Mr. Pate -- let the record reflect that Mr. Pate has turned away from The Court. He hasn't engaged. He has refused to participate in the hearing today, but I want to be clear, Mr. Pate --

THE DEFENDANT: I don't consent to this hearing. I don't consent to jurisdiction.

THE COURT: You stated that previously.

THE DEFENDANT: We have nothing to talk about, sir.

THE COURT: This case is going to go forward. It will proceed towards trial. To be clear, you have certain constitutional and statutory rights to be present.

THE DEFENDANT: I don't have constitutional rights. I'm not a US citizen, sir.

THE COURT: And to participate in these proceedings, but

you can waive that right as well by engaging in disorderly and unruly conduct. And until you agree to conduct yourself in an orderly manner --

THE DEFENDANT: I don't want to be here with you or this Court.

THE COURT: But I want it to be very, very clear, Mr. Pate --

THE DEFENDANT: I'm not Mr. Pate.

THE COURT: -- that this case is going to go forward toward trial.

THE DEFENDANT: If you want me to be that, that transmitted to it. I'm not it. I'm not Mr. Pate. I'm not a name spelled in all capital letters. You must think I'm a fool. I'm not.

THE COURT: All right.

THE DEFENDANT: We're done here.

THE COURT: With that, we will be adjourned.

(Proceeding concluded at 10:45 a.m.)

CERTIFICATION

I certify that the foregoing is a true and correct transcript of the stenographic record of the above-mentioned matter.

___________________________________ 05/12/2019

Debra Gilbert, Court Reporter Date