[PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

---

No. 20-10545

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

TIMOTHY JERMAINE PATE,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 1:18-cr-00045-RSB-BWC-1

---

Before NEWSOM, BRANCH, and LAGOA, Circuit Judges.

LAGOA, Circuit Judge:

Title 18 U.S.C. § 1521 prohibits the filing of a false lien or encumbrance against the property of any officer or employee of the United States "on account of the performance of official duties." In 2018, Timothy Jermaine Pate filed various false liens against John Koskinen, the former Commissioner of the Internal Revenue Service, and Jacob Lew, the former Secretary of the Treasury. There is no dispute that Pate filed the false liens to retaliate against Lew and Koskinen for acts they performed as part of their official duties. The twist here, and what makes this a case of first impression for this Court, is that Pate filed the false liens after Lew and Koskinen had left their positions with the federal government. We therefore are presented with the following question: Does § 1521 apply to false liens filed against former federal officers and employees for official actions they performed while in service with the federal government? We conclude that the answer to this question is yes—the plain language of § 1521 covers both current and former federal officers and employees. Thus, for the reasons discussed below, and with the benefit of oral argument, we affirm Pate's convictions predicated on violations of § 1521.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 3, 2018, a grand jury indicted Pate, who often referred to himself as "Akenaten Ali," on sixteen counts of filing false retaliatory liens against federal officials in violation of § 1521

and five counts of false bankruptcy declarations in violation of 18 U.S.C. § 152(3). This appeal concerns only four of the filing-false-lien counts, with one set of counts pertaining to false liens filed against John Koskinen, the former Commissioner of the Internal Revenue Service ("IRS"), and the other set of counts pertaining to false liens filed against Jacob Lew, the former Secretary of the Treasury. At the times relevant to this appeal, Koskinen and Lew were no longer government officials.

As to the counts pertaining to Koskinen, Count 1 alleged that Pate filed a false retaliatory lien against Koskinen on or about March 6, 2018. Likewise, Count 6 alleged that Pate filed another false retaliatory lien against Koskinen on or about May 7, 2018. As to the counts pertaining to Lew, Count 5 alleged that Pate filed a false retaliatory lien against Lew on or about May 1, 2018. Similarly, Count 8 alleged that Pate filed another false retaliatory lien against Lew on or about May 7, 2018. As discussed below, these counts stemmed from Pate's filing of the false liens during a separate civil lawsuit that Pate filed against Koskinen, seemingly in an attempt to recoup a tax credit from the IRS. As relevant to this appeal, the magistrate judge entered a plea of not guilty for Pate as to these criminal counts, and the matter proceeded to trial on October 15, 2019.

At trial, the government called Jamie Hodge, the deputy clerk for the United States District Court for the Southern District of Georgia, as a witness. Hodge testified that Pate filed a complaint against Koskinen in a separate civil action on October 10, 2017 and

indicated that an affidavit of compliance was attached to the complaint, stating that the IRS had not returned to Pate a tax credit for 2015 and 2016,[1] that Pate was not a United States citizen, that Pate would never play the role of a debtor, and that Pate was an "heir to the Kingdom of Morocco." In his filings, Pate threatened to file liens against any judge, tax official, attorney, government official, or individual who opposed him in his litigation against Koskinen.

The United States Department of Justice ("DOJ") filed a motion to dismiss on Koskinen's behalf in this separate civil lawsuit, arguing that Pate was a "tax defier who participated in an original issue discount . . . scheme to defraud the government" and that such a scheme was a "frivolous tax argument that has been around in various forms for many years." In his response to DOJ's motion, Pate threatened to file liens against Koskinen, Lew, and others if the IRS did not return to Pate the purported tax credit and if Koskinen, Lew, and others failed to answer his questions. Pate subsequently carried out his threats, filing a $33 million maritime lien against Koskinen on March 6, 2018 and a $15 million maritime lien against Lew on May 1, 2018. While the motion to dismiss in this separate civil lawsuit was pending, Pate also filed another lien against Koskinen for $33 million and another lien against Lew for $15 million in the form of U.C.C. Financing Statements on May 7,

---

[1] Pate previously filed frivolous tax returns with the IRS for 2015 and 2016, claiming refunds roughly totaling $3.8 million. When the IRS failed to pay the refunds he requested, Pate filed a petition in the United States Tax Court. Ultimately, the Tax Court dismissed Pate's case.

2018. Thereafter, the district court presiding over the civil lawsuit dismissed Pate's case and, through a miscellaneous proceeding, declared the liens null and void, expunged them from the record, and prohibited Pate from filing such actions and liens without the district court's prior authorization.

At the criminal trial relevant to this appeal, the government also called Koskinen and Lew as witnesses. Koskinen testified that he was Commissioner of the IRS from December 2013 to November 2017 and that he was currently retired. He denied having any meetings, communications, correspondence, contracts, or loans with Pate. He also denied owing Pate $33 million when asked about the maritime lien and U.C.C. Financing Statement lien. With respect to the U.C.C. Financing Statement lien, Koskinen identified the mailing address listed below his name as belonging to the IRS headquarters in Washington, D.C.

During Lew's testimony, Lew stated that he was the Secretary of the Treasury between February 2013 and January 20, 2017, and that he currently worked as a partner in a private equity firm and as a visiting professor at Columbia University. Like Koskinen, Lew denied having any knowledge of Pate or having any communications or loans with him. He also denied owing Pate $15 million when asked about the maritime lien and U.C.C. Financing Statement lien. With respect to the U.C.C. Financing Statement lien, Lew identified the mailing address listed below his name—i.e., 1500 Pennsylvania Avenue NW, Washington, D.C.—as belonging to the Department of the Treasury.

After the government rested, defense counsel for Pate moved for a directed verdict as to Counts 1, 5, 6, and 8, arguing that "the federal official[s] alleged in those counts, former Commissioner [Koskinen], and former Secretary . . . Lew, were not public officials at the time" Pate filed the liens. For this reason, defense counsel asserted that § 1521 did not apply to Pate because § 1521, and its cross reference to 18 U.S.C. § 1114, did not pertain to former government officials. The district court took the motion under advisement and denied it, ruling that there was sufficient evidence from which the jury could conclude that Pate filed the liens against Koskinen and Lew "on account of the performance of official duties." Pate did not present a further defense, and the jury found him guilty on all twenty-one counts. The district court subsequently sentenced Pate to 300 months' imprisonment, and Pate filed this timely appeal relevant to the four counts of filing false liens.

## II. STANDARD OF REVIEW

"We review questions of statutory interpretation de novo." *United States v. Johnson*, 399 F.3d 1297, 1298 (11th Cir. 2005)

## III. ANALYSIS

On appeal, Pate advances the same argument that he made to the district court during his motion for a directed verdict—that § 1521 does not apply to him because, as he claims, § 1521 does not apply to former government officials like Koskinen and Lew. For

the below reasons, we are not persuaded by Pate's argument and his reading of § 1521.

Statutory interpretation analysis "begins and ends with the statutory text." *Singh v. U.S. Att'y Gen.*, 945 F.3d 1310, 1314 (11th Cir. 2019). This "fundamental precept" of statutory interpretation requires that the statute's language "be given its plain and ordinary meaning unless the statutory text or context requires otherwise." *United States v. Chinchilla*, 987 F.3d 1303, 1313 (11th Cir. 2021). As such, we begin with the applicable statutory text.

Section 1521, the primary statute under review, provides:

> Whoever files, attempts to file, or conspires to file, in any public record or in any private record which is generally available to the public, any false lien or encumbrance against the real or personal property of an individual described in [18 U.S.C.] section 1114, on account of the performance of official duties by that individual, knowing or having reason to know that such lien or encumbrance is false or contains any materially false, fictitious, or fraudulent statement or representation, shall be fined under this title or imprisoned for not more than 10 years, or both.

For purposes of § 1521, Congress premised liability on an action taken against "an individual described in section 1114,"

thereby incorporating portions of § 1114. Section 1114 makes it a crime to kill or attempt to kill[2]:

> [A]ny officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that assistance.

Section 1114 addresses two categories of individuals. First, § 1114 addresses "any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services)." And, under this category, § 1114 makes it a crime to kill or attempt to kill: (1) a federal officer or employee "while . . . engaged in . . . the performance of official duties" or (2) a federal officer or employee "on account of the performance of official duties." In this sense, § 1114 contains both a temporal qualification on liability—i.e., making it a crime to kill or attempt to kill a federal officer or employee while that officer or employee is presently "engaged in" an official act—and a causal qualification on liability—i.e., making it a crime to kill or attempt

[2] The current language in § 1114 covering "any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services)" was enacted in 1996. *See* The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104–132, § 727, 110 Stat. 1214, 1302.

to kill a federal officer or employee because of an act that officer or employee performed pursuant to his official duties. Second, § 1114 addresses any person who lends assistance to a federal officer or employee. For our purposes, the first category of individuals described in § 1114 takes priority because Koskinen and Lew served as officers or employees of the United States or an agency thereof.

The key phrase in this case is "on account of the performance of official duties" as set forth in § 1521 and its interaction with the words "any officer or employee" as set forth in § 1114 and incorporated by reference in § 1521. A cardinal rule of statutory interpretation is "that '[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'" *Corley v. United States*, 556 U.S. 303, 314 (2009) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)); *see In re Appling*, 848 F.3d 953, 959 (11th Cir. 2017) ("If possible, every word and every provision is to be given effect . . . . None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence." (quoting Antonin Scalia & Bryan A. Garner, *Reading Law* 174 (2012))). As we read the language of § 1521, limiting its scope to current officers and employees fails to give full effect to the phrase modifying the preceding statutory terms, "on account of the performance of official duties." *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (explaining that a statute's meaning is "mandated" by its "grammatical structure").

Section 1521 provides a federal forum to prosecute forms of economic retaliation against federal officers and employees.[3] Significantly, § 1521 does not criminalize the filing of a false lien against an individual's property based simply on his employment status. Instead, Congress's phrase "on account of the performance of official duties" modifies the preceding text in § 1521— "an individual described in section 1114"—and establishes the prohibited purpose of filing a false lien or encumbrance, i.e., creating a causal connection between the filing of a false lien or encumbrance and some act taken by a federal officer or employee as part of his official duties. *Cf. O'Gilvie v. United States*, 519 U.S. 79, 81, 83 (1996) (interpretating the phrase "on account of," in the context of a provision in the Internal Revenue Code that excludes from gross income certain damages received by a plaintiff "on account of personal injuries" as imposing a "strong[] causal connection" consistent with the phrase's dictionary definition: "for the sake of: by reason of: because of" (quoting *Webster's Third New International Dictionary* 13 (1981))). Thus, § 1521 makes it illegal to file a false lien against the property of a federal officer or employee because of something he *did* as part of his official duties. And an individual who files a false lien against the property of a federal officer or employee for reasons unrelated to the performance of official duties does not fall within the scope of § 1521.

[3] Section 1114 does the same thing although for a more serious offense—murder.

Notably, the statutory language modifying "an individual described in section 1114"—i.e., "on account of the performance of official duties"—does not contain a temporal restriction limiting the statute's coverage to only current federal officers or employees performing present acts, as seen in the dual qualifications of § 1114. Instead, liability under § 1521 only hinges on the past performance of official acts by an individual who has acted in an official capacity. This makes sense. Unlike an attempt to kill a federal officer or employee while he is "engaged in" the performance of his official duties as described in the temporal liability portion of § 1114, filing a lien does not happen simultaneously with the official act needed to establish liability under § 1521—the lien is filed in reaction to some official act which already occurred. And the consequences of that official act can continue after the individual's tenure in office or employment has ended, as can the intent to retaliate against the individual for that act.

Because § 1521's prohibition depends upon what an individual did while acting as a federal officer or employee, and not simply his employment status at the time of the action at issue, the natural reading of the statute's language leads us to conclude that the terms "officer" and "employee" encompass both current and former officers and employees. It is of no consequence that the individual has retired or otherwise left his office or employment at the time the false lien was filed. What matters is whether the false lien was filed against the federal officer or employee "on account of the performance of official duties"—i.e., the lien was filed *because of* an

action *taken* by that officer or employee irrespective of the current employment status of that officer or employee. And, while the dissent relies on various dictionary definitions to conclude that the terms "officer" and "employee" mean *current* officers and employees, Dis. Op. at 4–5, the dissent, also acknowledges that such terms may include either or both current *and former* officers and employees in certain instances, *id.* at 17–20. We believe that this is such an instance, given the language and construction of § 1521.[4]

A number of other considerations support this reading. First, § 1521's cross-reference to "an individual described in section 1114" incorporates that latter statute's use of broadening language—i.e., "*any* officer or employee of the United States." § 1114 (emphasis added); *see United States v. Caniff*, 955 F.3d 1183, 1190 (11th Cir. 2021) ("As we have often had occasion to say, when

[4] For further support in arguing that the term "officer" means current officers, the dissent also references the Dictionary Act's statement that, "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise . . . 'officer' includes any person authorized by law to perform the duties of the office." Dis. Op. at 4 (quoting 1 U.S.C. § 1). We do not find this statement to undercut our interpretation of § 1521 for at least two reasons. First, as explicitly noted in the statement, "context" is key. § 1. Second, and importantly, there is no question that Koskinen and Lew were "authorized by law to perform the duties of the office[s]" that they held. *Id.* Indeed, this case would not be before us had they not been federal officers at one point. What matters is that they were "authorized by law to perform the duties of the office[s]" that they held, *id.*, and, that "on account of the performance of official duties," Pate filed false retaliatory liens against them, § 1521, which he unequivocally did.

interpreting a statute, 'any' means 'all.'"); *Laperriere v. Vesta Ins. Grp., Inc.*, 526 F.3d 715, 726 (11th Cir. 2008) ("[T]he term 'any' in a statute has a 'broad,' 'powerful,' and 'expansive' meaning; 'it does not mean "some" or "all but a few," but instead means "all."'"); *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1186 (11th Cir. 1997) ("[T]he adjective 'any' is not ambiguous; it has a well-established meaning. . . . 'Congress did not add any language limiting the breadth of that word,' so 'any' means all." (quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997))). Accordingly, our precedent requires us to give the words "officer" and "employee" the broadest interpretation they will reasonably bear. *See Caniff*, 955 F.3d at 1190. We see no reason why it is reasonable to read the word "current" into the statute but unreasonable to read the statute as also including former officers and employees of the United States, as the dissent would have it. This is especially true in light of the fact that §1521 solely maintains a causal method of violation in the language and structure of the text.

While we respectfully acknowledge the arguments made by the dissent, problems with the dissent's more limited reading of § 1521's language arise when applied to the identical language found in § 1114. Section 1114 has separate temporal and causal qualifications on liability under the statute. The temporal language—i.e., "*while* such officer or employee *is engaged in* . . . the performance of official duties"—that qualifies liability against a federal officer or employee in one portion of § 1114 is not found in § 1521. The temporal portion of § 1114 unambiguously refers to

what an officer or employee *is doing* at the time the defendant killed or threatened to kill him. This would include, for example, shooting a federal law enforcement officer trying to serve a search warrant.

In contrast, § 1114's causal qualifications on liability—i.e., "on account of performance of official duties"—is identical to the language used in § 1521, and it unambiguously prohibits killing or attempting to kill a federal officer or employee because of something he *did in the past* as part of his official duties. Some examples of acts contemplated by § 1114 include: attempting to kill a federal prosecutor for an investigation he spearheaded or a case he tried; attempting to kill a Cabinet officer for a policy he implemented; attempting to kill a federal law enforcement officer whose undercover work led to a successful prosecution; and attempting to kill a retired federal judge for a sentence he imposed or an opinion he authored. Under the dissent's interpretation, federal criminal liability and a federal forum to prosecute such criminal liability disappear under § 1114 once the individual's tenure in office or term of employment ends. As already discussed in connection with the identical language used in § 1521, we believe that this reading is too narrow and does not give full effect to the statutory language regarding the performance of a past official act without the qualification of a temporal employment restriction.

Finally, as noted by the dissent, purposivism, which describes a method of statutory construction, cannot guide our analysis. Dis. Op. at 13, 16–17. Indeed, it is axiomatic that a statute's

purpose "must be derived from the text itself" and "cannot be used to contradict the text" or used alone to justify it. *United States v. Bryant*, 996 F.3d 1243, 1257–58 (11th Cir. 2021) (quoting *Bellitto v. Snipes*, 935 F.3d 1192, 1201 (11th Cir. 2019)). But a statute's purpose, when derived from the statutory text itself, "is a constituent of meaning and can be helpful in understanding the 'ordinary, contemporary, common meaning' of the statute's language." *Id.* at 1257 (quoting *United States v. Haun*, 494 F.3d 1006, 10009 (11th Cir. 2007)). *See generally* Scalia & Garner, *supra*, § 2, at 56–58. And, in analyzing competing statutory interpretations, "we must favor the 'textually permissible interpretation that furthers rather than obstructs' the statute's purposes." *Bryant*, 996 F.3d at 1256 (quoting Scalia & Garner, *supra*, § 4, at 63). The statutory purpose of § 1521, derived only from the statutory text itself, is to criminalize the act of filing or attempting to file a false lien or encumbrance against the real or personal property of a federal officer or employee because of something he did as part of his official duties, i.e., "on account of the performance of official duties." While the statutory purpose certainly cannot justify an interpretation that varies from the statutory language, it lends further support to the interpretation analysis set forth above.

But even if we assume that the dissent's reading is correct, and liability under § 1521 is coterminous with a federal officer or employee's term in office or employment, we still must consider how it applies to that second category of individuals described in § 1114 and incorporated by reference into § 1521. As noted earlier,

in addition to federal officers and employees, § 1114 also describes "any person assisting such an officer or employee," and prohibits killing or attempting to kill that person either while he is assisting the federal officer "in the performance of such duties" or "on account of that assistance." Examples might be a state or local law enforcement officer assisting a federal law enforcement officer in an ongoing investigation, or a government informant who provided evidence and testimony against criminal co-conspirators.

A reading of the statute's plain language—"any person assisting such an officer or employee in the performance of such duties or on account of that assistance"—does not suggest that its protection ends at some ascertainable point in time. Like the language regarding a federal officer or employee, the language regarding a person who lends assistance to a federal officer or employee has both a temporal qualification on liability—i.e., prohibiting the killing or the attempting to kill "any person assisting such an officer or employee in the performance of such duties"—and a causal qualification on liability—i.e., prohibiting the killing or the attempting to kill "any person . . . on account of that assistance." Because of the causal language, there is no textual indication that the prohibition as it relates to the non-federal actor expires once the federal actor retires or otherwise leaves federal employment. To the contrary, the protection provided to the non-federal actor depends upon his own action—i.e., the assistance of a federal officer or employee either in the instant moment or in the past—and has nothing to do with the continuing employment status of the federal

actor. While the dissent contends that "we needn't consider" a non-federal actor who lends assistance to a federal officer or employee, the dissent's reading of § 1114 and § 1521 would provide greater protection, including a federal forum to prosecute, to the non-federal actor than to the federal officer or employee who the non-federal actor assisted because, under the dissent's reading, these statutes do not apply to federal officers or employees once their employment status has ended. Dis. Op. at 9–10 n.4. That conclusion comes despite these statutes using similar causal language as it pertains to both a federal officer or employee and a person who lends assistance to such a federal actor. And, as shown, the causal language as it pertains to such a person who lends assistance to a federal officer or employee is not predicated on the future employment status of the federal actor.

While Congress could certainly write such a statute, we do not believe that the language of either § 1114 or § 1521 supports that reading here. Instead, Congress' use of the causal qualification—"on account of the performance of official duties"—that premises criminal liability on filing or attempting to file a lien or encumbrance against the real or personal property of a federal officer or employee based on an action that the officer or employee did while performing his official duties means that § 1521 unambiguously covers both current and former officers and employees of the United States. Because we find the express language under § 1521, as well as the language that § 1521 incorporates from § 1114, to be unambiguous, we see no need to examine other statutes and

Congress's intent behind passing those other statutes, as the dissent stakes much of its argument on. Dis. Op. at 5–6, 9–10 n.4; *see United States v. Warren*, 820 F.3d 406, 408 (11th Cir. 2016) (explaining that courts "apply *in pari materia* only when a legal text is ambiguous" and collecting cases).

## IV. CONCLUSION

Thus, for the foregoing reasons, we affirm Pate's convictions predicated on filing false and retaliatory liens against former Commissioner Koskinen and former Secretary Lew under the plain language of § 1521.

**AFFIRMED.**

NEWSOM, Circuit Judge, dissenting:

Although this case arises against an odd factual backdrop and involves a pretty unsympathetic defendant, it turns on a remarkably straightforward question of statutory interpretation: Is a *former* government official an "officer or employee of the United States" within the meaning of 18 U.S.C. § 1114 and, thereby, of 18 U.S.C. § 1521? To resolve that question, we must, of course, afford the quoted language its plain and ordinary meaning. But by holding that two individuals who have retired from civil service are *still* "officer[s] or employee[s] of the United States," the majority construes the pivotal phrase in a manner that is neither plain nor ordinary. Because the majority's construction contravenes the text, structure, and statutory context of §§ 1114 and 1521, I respectfully dissent.

# I

## A

Like the majority, I begin my analysis with the statute of conviction, 18 U.S.C. § 1521. Enacted as part of the Court Security Improvement Act of 2007, Pub. L. No. 110-177, 121 Stat. 2534 (2008), § 1521 says, in relevant part, that—

> [w]hoever files . . . any false lien or encumbrance against the real or personal property of *an individual described in section 1114*, on account of the performance of official duties by that individual, knowing or having reason to know that such lien or

> encumbrance is false . . . shall be fined under this title or imprisoned for not more than 10 years, or both.

18 U.S.C. § 1521 (emphasis added).

To understand the italicized phrase, we must look to the statutory section that it cites, 18 U.S.C. § 1114. With its origins in the Act of May 18, 1934, Pub. L. No. 73-230, 48 Stat. 780, the current version of § 1114 says the following:

> Whoever kills or attempts to kill any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that assistance, shall be punished . . . .

18 U.S.C. § 1114(a); *see also United States v. Feola*, 420 U.S. 671, 679–82 (1975) (explaining the history of the 1934 Act); *United States v. Bedford*, 914 F.3d 422, 427 n.2 (6th Cir. 2019) (noting that Congress streamlined the statute in 1996 and replaced "a lengthy list of specific federal officers and employees" with the present language).

As I read §§ 1114 and 1521, they don't criminalize Timothy Pate's conduct. Very briefly, Pate filed two false tax liens against each of two individuals. In the spring of 2018, he filed a pair of liens against the property of former IRS Commissioner John Koskinen, who had concluded his tenure in office several months earlier. And

in May 2018, he filed two liens against the property of former Treasury Secretary Jacob Lew, who had likewise wrapped up his time in office several months earlier. Pate's conduct was undoubtedly improper. It was almost certainly tortious. But it wasn't criminal. For reasons I'll explain, because it is undisputed that neither Koskinen nor Lew was an "officer or employee of the United States" at the time that Pate filed liens against their property, those liens fall outside the scope of § 1521's prohibition.

**B**

As the Supreme Court recently reiterated, "[w]hen called on to resolve a dispute over a statute's meaning, [a court] normally seeks to afford the law's terms their ordinary meaning at the time Congress adopted them." *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1480 (2021). Put another way, we "ask how a reasonable person, conversant with the relevant social and linguistic conventions, would read the text in context." John F. Manning, *The Absurdity Doctrine*, 116 Harv. L. Rev. 2387, 2392–93 (2003).

Here, that means we seek the ordinary meaning of the key phrase in § 1114, which § 1521 incorporates by reference: "any officer or employee of the United States." More particularly, we must ask whether that phrase—as used here—would be understood by the average speaker of American English to include *former* officers or employees of the United States. It wouldn't be.

**1**

Start with the ordinary meaning of the statutory phrase's constituent parts. With respect to the term "officer," the Dictionary Act provides a helpful hint. It states that "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise . . . 'officer' includes any person authorized by law to perform the duties of the office." 1 U.S.C. § 1. Needless to say, after one leaves office, he is no longer "authorized by law to perform the duties of the office." So the Dictionary Act gives us one good reason to think that § 1114's reference to federal "officer[s]" is best read to mean *current* officers.

Standard dictionary definitions of both "officer" and "employee"—which the majority ignores—likewise indicate an element of currency. Consider the present-tense verbs (with my emphasis) used to define those terms. The Oxford English Dictionary defines "officer" as a "person who *holds* a particular office, post, or place," and as one "*holding* office and *taking* part in the management or direction of a society or institution, esp[ecially] one *holding* the office of president, treasurer, or secretary; an office-holder." *Officer*, Oxford English Dictionary (online ed.).[1] It similarly defines "employee" in present-tense terms as a "person who *works* for an employer." *Employee*, *id.*[2] Merriam-Webster's Collegiate Dictionary is of a piece. It defines "officer" as "one who *holds* an

[1] *See* https://www.oed.com/view/Entry/130647 (last visited Aug. 1, 2022).

[2] *See* https://www.oed.com/view/Entry/61374 (last visited Aug. 1, 2022).

office of trust, authority, or command," *Officer*, Merriam-Webster's Collegiate Dictionary 861 (11th ed. 2014), and "employee" as "one *employed* by another usu[ally] for wages or salary and in a position below the executive level," *Employee*, *id.* at 408. So too, Black's Law Dictionary: An "officer" is "[s]omeone who *holds* an office of trust, authority, or command." *Officer*, Black's Law Dictionary 1257 (10th ed. 2014). And an "employee" is "[s]omeone who *works* in the service of another person (the employer) under an express or implied contract of hire." *Employee*, *id.* at 639.

The popular and legal dictionaries' concurrence is powerful evidence of those terms' ordinary meanings. *See, e.g.*, *Spencer v. Specialty Foundry Prods. Inc.*, 953 F.3d 735, 740 (11th Cir. 2020). Here, those sources indicate that the words "officer" and "employee" ordinarily refer to those presently holding office or employed, not those who formerly held office or were so employed.

Pate's ordinary-meaning, present-tense interpretation is confirmed by the broader statutory context—in particular, by other statutes that incorporate § 1114. Both 18 U.S.C. § 111 and 18 U.S.C. § 115 include explicit references to individuals "who formerly served as a person designated" in § 1114. Those cross-references make perfect sense on Pate's reading of § 1114—they refer to an individual "who formerly served as [an officer or employee of the United States]." The majority's decidedly *un*-ordinary current-or-former-officer-or-employee interpretation, by contrast, makes nonsense of them; on that reading, those statutes cover any individual "who formerly served as [a current or former officer or

employee of the United States]." Because, in the majority's view, § 1114 has *always* included former employees and officers, § 111's and § 115's specific references to former officers and employees are superfluous. *But see Duncan v. Walker*, 533 U.S. 167, 174 (2001) (emphasizing that courts should "give effect, if possible, to every clause and word of a statute" (quotation marks omitted)).

What's more, the fact that Congress chose to modify § 111's and § 115's cross-references to § 1114 to explicitly include former officers and employees suggests that absent some similar modification, § 1114 doesn't include them. The language that Congress used in §§ 111 and 115—referring to those "who formerly served as a person designated" in § 1114—would support Pate's convictions if it existed in § 1521. But it doesn't, and so it can't. *Cf. United States v. Papagno*, 639 F.3d 1093, 1099–1100 & n.3 (D.C. Cir. 2011) (Kavanaugh, J.) (explaining that when Congress deploys different statutory language within the same field of legislation, "dissimilar language need not always have been enacted at the same time or found in the same statute" to support inferences about statutory meaning).[3]

---

[3] The majority refuses to consider the import of §§ 111 and 115 on the ground, it says, that "§ 1521 *unambiguously* covers both current and former officers and employees of the United States." Maj. Op. at 17 (emphasis added). Needless to say, I disagree. On balance, § 1521 and its referent § 1114 are best understood *not* to reach former officers and employees. But at the very least, it can't be said that they so "unambiguously" do so as to warrant ignoring the contrary structural evidence that §§ 111 and 115 provide.

Unsurprisingly, the dictionary definitions and the evidence from statutory context cohere with how the words "officer" and "employee" are used in everyday parlance. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 69 (2012) ("Words are to be understood in their ordinary, everyday meanings . . . ."); *United States v. Caniff*, 916 F.3d 929, 941 (11th Cir. 2019) (Newsom, J., concurring in part and dissenting in part) (emphasizing the import of "how people talk"), *vacated and superseded*, 955 F.3d 1183 (11th Cir. 2020) (per curiam). We federal judges, for instance, had jobs before we came to the bench. Some of us worked in private practice, others in state government. But it would be passing strange to describe a judge as an "employee" of the law firm for which she used to work. And it would be stranger still to describe a *federal* judge as an "officer" of a *state* she used to serve.

A hypothetical underscores the point. Imagine a law providing that "officers or employees" of the IRS may not take money from accounting firms. Suppose further that on the very same day that Pate filed a lien against him, Koskinen had accepted a job with one of the "Big Four" that came with a generous signing bonus. Would we think Koskinen had violated the law? Inconceivable. Reasonably read, our hypothetical statute's prohibition on taking money from accounting firms ends when government employment does. And so it is with § 1114.

To sum up: Based on its constituent parts, the broader statutory context, and lessons from ordinary usage—all of which the

majority disregards—I would hold that former officers and employees aren't the sorts of "individual[s] described in section 1114," 18 U.S.C. § 1521, and therefore, that § 1521 didn't prohibit Pate's conduct.

**2**

The majority and the government present several arguments for reading § 1114—and thus § 1521—to include former officers and employees. None is persuasive.

**a**

First, the majority proposes a two-track reading of § 1114 that, on its theory, enables § 1521 to reach former federal officers and employees. The key division, from the majority's perspective, is between (a) crimes committed "*while such officer or employee is engaged in* . . . the performance of official duties" and (b) those committed "*on account of* the performance of official duties." 18 U.S.C. § 1114 (emphasis added); *see* Maj. Op. at 8–11, 13–14. The first plainly includes a temporal element—hence the "while." In contrast, the majority observes, § 1114's "on account of" language contains no temporal element—only a causal one. And "[n]otably," the majority says, § 1521 "does not contain a temporal restriction" at all, as "in the dual qualifications of § 1114." Maj. Op. at 11. So, it concludes, the "only" thing that matters is that the victim was targeted "on account of" his official actions; whether he's a current or former federal officer or employee is "of no consequence." *Id.*

Though plausible at first blush, the majority's interpretation doesn't withstand careful scrutiny. First, and most immediately, it makes a mess of § 1114's syntax. Both the "while engaged in" and "on account of" clauses relate to the performance of official duties—in particular, they explain the relationship that a killing must have to an officer's or employee's performance of official duties in order to constitute a crime under § 1114. *See* 18 U.S.C. § 1114 (forbidding the killing of federal officers and employees "while such officer or employee *is engaged in or on account of* the performance of official duties" (emphasis added)). But these clauses, which operate to *limit* the circumstances under which criminal liability exists by virtue of § 1114, provide no bases on which to *expand* the scope of the terms that precede them.

In much the same way, the majority's reading conflicts with § 1521's structure. That provision, recall, forbids filing "any false lien or encumbrance against the real or personal property of an individual described in section 1114, on account of the performance of official duties by that individual." 18 U.S.C. § 1521. Accordingly, criminal liability arises when someone (1) files a false lien (2) against the property of a qualifying individual (3) on account of that individual's performance of official duties.[4] The majority's

[4] Because the parties focus exclusively on the category of federal "officer[s and] employee[s]" referenced in § 1114,we needn't consider the other category of individuals described in that section—*i.e.*, "any person assisting such an officer or employee in the performance of such duties." Even if we did, though, I don't see how the "assist[ant]" category could be leveraged to expand the officer-or-employee category beyond its ordinary meaning to include former

reading, at bottom, means that whenever the third, "on account of" condition is met, the second is satisfied as well. But that ignores the fact that in order to be a qualifying individual, the victim must be an "officer or employee of the United States."

Next, the majority observes that we should strive to interpret a statute "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." Maj. Op. at 9 (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)). I have no quarrel with the anti-surplusage canon, but I don't think the majority's invocation of it holds water. As I understand matters, the majority maintains that my plain-text reading fails to give the "on account of" language in § 1521 any meaningful effect. I don't think so. I agree with the majority about one thing: Section 1521 "makes it illegal to file a false lien against the property of

---

civil servants. To be sure, it may well be that once a federal officer leaves his post, an assistant remains protected by §§ 1114 and 1521 because she, herself, "assist[ed]" a then-"officer or employee of the United States" "in the performance of [official] duties." *Cf.* Maj. Op. at 15–17. But even assuming that's true, it doesn't follow that the category of individuals principally protected by §§ 1114 and 1521—"officer[s and] employee[s] of the United States"—includes former government officials. If Congress wanted to protect former officials, then it could have drafted the statute accordingly—just as it did in §§ 111 and 115 to protect victims "who formerly served as a person designated in section 1114." *See supra* at 5–6 & n.3. The omission of similar language in § 1521 "is telling." *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484–85 (1996); *see Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768, 777 (2020) (explaining the interpretive "presum[ption] that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another" (cleaned up)).

a federal officer or employee because of something he did as part of his official duties." *Id.* at 10 (emphasis omitted). But it seems to me that the majority overlooks a key piece of its own statement—namely that, in addition to requiring a causal connection between the officer or employee's discharge of his or her official duties and the lien's filing, the statute requires, separately, that the victim *be* "a federal officer or employee." *Id.*; *see also* 18 U.S.C. § 1114. Both causation and job status are necessary conditions to conviction, and neither is superfluous of the other. If the victim were a federal officer or employee, but the lien wasn't filed "on account of" something he did in his official capacity, the defendant wouldn't be criminally liable—as even the majority admits.[5] *See* Maj. Op. at 10. For the exact same reason, if the lien were filed "on account of" something the victim did in his official capacity, but she was no longer a federal officer or employee, the defendant wouldn't be liable. The majority singularly—and impermissibly—focuses on one textual limitation to liability to the exclusion of the other.

**b**

The government separately contends that existing precedent supports its interpretation. The majority never mentions, and thus presumably doesn't buy, the government's argument—and with good reason. Even so, for the sake of completeness, I'll

---

[5] Which makes the majority's embrace of the anti-surplusage canon particularly odd. Its own concession illustrates that the "on account of" language has independent bite and thus isn't superfluous.

explain why the government's precedent-based arguments similarly misfire.

The government particularly emphasizes the Fifth Circuit's decision in *United States v. Raymer*, 876 F.2d 383 (5th Cir. 1989). There, a defendant appealed his conviction for threatening a probation officer in violation of 18 U.S.C. § 115, a statute that (as already explained) referenced the version of § 1114 then in effect. *See id.* at 384–85. Faced with the question whether retired probation officers fell within § 1114's ambit, the Fifth Circuit started, oddly, with the statute's legislative history, which it found "inconclusive." *Id.* at 389–90. Without legislative history to guide it, the court said, it was "left with the plain language of the statute." *Id.* at 390. It then reasoned that because the statute's text covered off-duty officials, it must also include "retired officials"—the latter, it said, being different from the former only in that retirees are "in a sense permanently off-duty." *Id.* And, the court concluded, covering former officials accorded with what it called the statute's "obvious purpose" of "free[ing] public officials from retaliation for their official acts." *Id.* at 391.

With respect, I find *Raymer* unpersuasive—and the government's contention that Congress has somehow ratified it in the intervening decades even more so. Beginning with *Raymer* itself, I see several problems. First, the Fifth Circuit relied heavily on what it took to be § 1114's "obvious purpose," but purposes, obvious or otherwise, don't provide license to skirt statutory text. And in any event, "[t]he best evidence of [any law's] purpose is the statutory

text adopted by both Houses of Congress and submitted to the President." *West Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 98 (1991); *see also United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95 (1820) (Marshall, C.J.) ("The intention of the legislature is to be collected from the words they employ."). *Raymer*'s appeals to statutory purpose—like the majority's here, *see* Maj. Op. at 14–15—do nothing to alter § 1114's plain language.

Nor am I persuaded by the *Raymer* court's contention that retired officials should be treated like off-duty officials—and thus covered by § 1114—because they are just "permanently off-duty." 876 F.2d at 390. A retired officer, in fact, is fundamentally different from an off-duty officer: One is on the payroll, the other isn't; one will be back on the job in short order, the other won't; one is engaged in the work of the federal government, the other isn't. And, at any rate, no amount of functional similarity between off-duty and retired officers can make § 1114 say what it doesn't say.

Whatever *Raymer*'s merits or demerits, though, the government next contends that Congress ratified the Fifth Circuit's interpretation of § 1114 when it enacted § 1521. I disagree. As an initial matter, "we walk on quicksand when we try to find in the absence of corrective legislation a controlling legal principle." *Helvering v. Hallock*, 309 U.S. 106, 121 (1940). That is doubly so when we are asked to take guidance from Congress's silence in the wake of decisions issued by what the Constitution calls "inferior Courts." U.S. Const. art. III, § 1. While it's true that the buck often stops with circuit courts, there is scant empirical support for the proposition

that when Congress legislates, it does so with individual circuit-court decisions in mind. *See* Amy Coney Barrett, *Statutory Stare Decisis in the Courts of Appeals*, 73 Geo. Wash. L. Rev. 317, 331 (2005) ("Empirical research shows fairly conclusively . . . that Congress is generally unaware of circuit-level statutory interpretations."). Accordingly, there is no strong normative case for the proposition that Congress's silence concerning § 1114 or its subsequent enactment of § 1521 should be understood as an endorsement of *Raymer*. *Cf. Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 607 (2010) (Scalia, J., concurring in part and concurring in the judgment) ("It seems to me unreasonable . . . to assume that, when Congress has a bill before it that contains language used in an earlier statute, it is aware of, and approves as correct, a mere three Court of Appeals decisions interpreting that earlier statute over the previous nine years.").[6]

[6] The government also relies on two other out-of-circuit authorities that cite *Raymer*—*United States v. Martin*, 163 F.3d 1212, 1215 (10th Cir. 1998), and *United States v. Wolff*, 370 F. App'x 888, 895 (10th Cir. 2010). Neither moves the needle. *Martin* addressed threats made against a local law enforcement officer who had been deputized to participate in an FBI investigation "during the time that the charged conduct occurred"—*i.e.*, when he was threatened. 163 F.3d at 1215. Accordingly, when *Martin* relied on *Raymer* for the proposition that the officer would have been covered "even if [he] had stopped working with the FBI" by the time he was threatened, it did so only in dictum. *See id.* And when *Wolff* (an unpublished opinion) adopted *Raymer*'s logic, it did so without any meaningful analysis of the statutory text or context. *See* 370 F. App'x at 895–96.

The government's reliance on *United States v. Feola* is equally misplaced. There, the Supreme Court considered 18 U.S.C. § 111—which, as already explained, cross-references § 1114—and held that it didn't require an assailant to know that his victim was a federal officer. 420 U.S. at 684. Along the way, the Court observed that Congress enacted § 1114 with the dual aims of "protect[ing] both federal officers and federal functions." *Id.* at 679. The reference to "federal functions" helps to explain why courts have held that local law enforcement officers who are targeted while acting as deputies to the federal government (or for actions taken while deputized) are "federal officers" within the meaning of § 1114. *See, e.g.*, *United States v. Luna*, 649 F.3d 91, 101 (1st Cir. 2011); *United States v. Martin*, 163 F.3d 1212, 1215 (10th Cir. 1998).

But we've already held that this concern for "federal functions" can't be read for all it might be worth. In *United States v. Kirkland*, 12 F.3d 199, 202–03 (11th Cir. 1994) (per curiam), we concluded that the general purpose of protecting federal functions couldn't trump the specific language of the then-extant version of § 1114. For that reason, we refused to count contract postmen as "officer[s] or employee[s] of the Postal Service." *Id.* at 202. Although *Kirkland* doesn't control here, it counsels against reading too much into *Feola*'s "federal functions" language.

### C

Without strong textual or precedential arguments, the government retreats to "that last redoubt of losing causes, the proposition that the statute at hand should be liberally construed to

achieve its purposes." *Director, Off. of Workers' Comp. Programs, Dep't of Lab. v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 135 (1995). Chief among the "laudatory purposes" served by §§ 1114 and 1521, the government says, is "maximum protection for federal officers and their functions." Br. of Appellee at 25–26. And to advance that goal, the government insists, we should construe those statutes to cover former officers and employees.

For the same reasons I find *Raymer*'s purposivism unpersuasive, I can't accept the government's invitation to stretch the text. Because "no legislation pursues its purposes at all costs," *Rodriguez v. United States*, 480 U.S. 522, 525–26 (1987) (per curiam), we aren't at liberty to do whatever would further the purposes that the government attributes to Congress. Doing so would ignore the fact that "the textual limitations upon a law's scope are no less a part of its 'purpose' than its substantive authorizations." *Kucana v. Holder*, 558 U.S. 233, 252 (2010) (quotation marks omitted).

That is especially so in the criminal context. Courts have long recognized that "before a man can be punished as a criminal under the Federal law his case must be plainly and unmistakably within the provisions of some statute." *United States v. Gradwell*, 243 U.S. 476, 485 (1917) (quotation marks omitted); *see also Wiltberger*, 18 U.S. (5 Wheat.) at 96 ("The case must be a strong one indeed, which would justify a Court in departing from the plain meaning of words, especially in a penal act, in search of an intention which the words themselves did not suggest."). So here, I reiterate with particular emphasis what is always true: "Elevating

general notions of purpose over the plain meaning of the text is inconsistent with our judicial duty to interpret the law as written." *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 970 (11th Cir. 2016) (en banc). "[A]s written," § 1114 doesn't cover former federal officers and employees, and § 1521 thus doesn't prohibit false liens against their property.[7]

***3***

None of this, of course, is to say that the terms "officer" and "employee" can *never* include formers. But examining decisions that have held that other statutes use those terms to cover former officers and employees shows that § 1114 (as incorporated into § 1521) is quite different.

Take *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997). There, the Supreme Court held "that the term 'employees,' as used in § 704(a) of Title VII, is ambiguous as to whether it includes former

---

[7] Where, as here, text, context, and structure favor an interpretation of a criminal statute that excludes the charged conduct, the rule of lenity layers "extra icing on a cake already frosted." *Van Buren v. United States*, 141 S. Ct. 1648, 1661 (2021) (quoting *Yates v. United States*, 574 U.S. 528, 557 (2015) (Kagan, J., dissenting)). But even assuming that, "at the end of the interpretive road," some ambiguity in §§ 1114 and 1521 remained, the rule would break the tie in Pate's favor. *See Caniff*, 955 F.3d at 1191 ("The rule of lenity holds that if at the end of the interpretive road—having exhausted the applicable semantic and contextual canons of interpretation, and thus seized everything from which aid can be derived—meaningful doubt remains about the application of a criminal statute to a defendant's conduct, then the doubt should be resolved in the defendant's favor." (cleaned up)).

employees." *Id.* at 346. Faced with that ambiguity, the Court concluded that it was "more consistent with the broader context of Title VII and the primary purpose of § 704(a)" to hold "that former employees are included within § 704(a)'s coverage." *Id.* Critically, though, in that case the Court had at least one solid textual indicator that "employee" carried a broader meaning. Under Title VII, "employees" have access to remedial mechanisms for unlawful discharges, and because any discharged employee is necessarily a former employee, the remedial mechanism for retaliatory firings makes sense only if "employees" includes former employees. *Id.* at 345. No such textual indicator exists here.

*Davis v. Michigan Department of Treasury*, 489 U.S. 803 (1989), is similar. That case presented the question whether retirement benefits paid to former federal employees came within the ambit of the following provision:

> The United States consents to the taxation of pay or compensation for personal service as an officer or employee of the United States . . . by a duly constituted taxing authority having jurisdiction, if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation.

4 U.S.C. § 111(a).

In *Davis*, the Supreme Court rejected a state's contention that retired federal employees weren't protected by that provision. 489 U.S. at 808–10. In doing so, the Court emphasized the provision's focus on "pay or compensation for personal service as an

officer or employee of the United States"—language that included federal retirement benefits because such benefits "are deferred compensation earned 'as' a federal employee." *Id.* at 808. Noting that the non-discrimination clause referred and applied to such compensation, and reading that clause to be consistent with the preceding provision, the Court held that a retired federal civil servant's pension was entitled to the statute's protection. *Id.* at 809–10.

One *might* analogize this case to *Davis*—on some level, after all, retirement benefits for and retaliatory actions against a former federal employee both relate back to the individual's time in government service. Conceptually, that makes sense. But we deal with particular texts, not abstract concepts. And as already explained, the key timing element in § 1521's text—the moment when we must assess an individual's status—is when the retaliatory lien was filed. Of course, the time when the victim took the actions that led the perpetrator to retaliate matters too—the "on account of" condition makes that much clear. But while that condition is a necessary one, it's not sufficient. Thus, § 1521's text compels a different conclusion here than in *Davis*.

Taken together, then, *Robinson* and *Davis* establish that words like "officer" and "employee" can sometimes include formers—but only when the statutory context makes clear that they should. Neither *Robinson* nor *Davis* suffices to show that the ordinary meaning of those terms includes ex-officers or erstwhile employees. Here, given the absence of textual indicators supporting

a broader reading of the terms,[8] I cannot adopt the majority's (or the government's) expansive interpretation. *Cf. Nichols v. United States*, 136 S. Ct. 1113, 1118 (2016) ("As we long ago remarked in another context, '[w]hat the government asks is not a construction of a statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope. To supply omissions transcends the judicial function.'" (quoting *Iselin v. United States*, 270 U.S. 245, 251 (1926))).

* * *

"The statute says what it says—or perhaps better put here, does not say what it does not say." *Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 138 S. Ct. 1061, 1069 (2018). Because Pate filed his liens when his victims were no longer government "officer[s] or employee[s]" within the meaning of § 1114, his conduct (however improper) wasn't criminalized by 18 U.S.C. § 1521.

I respectfully dissent.

---

[8] The majority emphasizes § 1114's use of the word "any" as a reason to "broaden[]" the statute's reach. *See* Maj. Op. at 12–13. But while "any" is surely a capacious term, the net that it casts is necessarily limited by a proper understanding of the nouns that it modifies. *See National Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 629 (2018). Accordingly, the word "any" can't expand the phrase "officer or employee of the United States" to include an individual who is not, in fact, an "officer of employee of the United States." *See id.*

**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

August 10, 2022

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 20-10545-AA
Case Style: USA v. Timothy Pate
District Court Docket No: 1:18-cr-00045-RSB-BWC-1

Electronic Filing
All counsel must file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Although not required, non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing are available on the Court's website. Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call T. L. Searcy, AA at (404) 335-6180.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6151

OPIN-1 Ntc of Issuance of Opinion