[PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

---

No. 20-10545

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

TIMOTHY JERMAINE PATE,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 1:18-cr-00045-RSB-BWC-1

---

Before WILLIAM PRYOR, Chief Judge, WILSON, JORDAN, ROSENBAUM, JILL PRYOR, NEWSOM, BRANCH, GRANT, LUCK, LAGOA, BRASHER, and ABUDU, Circuit Judges.

NEWSOM, Circuit Judge, delivered the opinion of the Court, in which WILLIAM PRYOR, Chief Judge, WILSON, JORDAN, ROSENBAUM, JILL PRYOR, LUCK, and ABUDU, Circuit Judges, joined, and in which BRASHER, Circuit Judge, joined in part.

ROSENBAUM, Circuit Judge, filed a concurring opinion, in which WILLIAM PRYOR, Chief Judge, and NEWSOM, Circuit Judge, joined.

BRASHER, Circuit Judge, filed an opinion concurring in part.

GRANT, Circuit Judge, filed a dissenting opinion in which BRANCH and LAGOA, Circuit Judges, joined.

LAGOA, Circuit Judge, filed a dissenting opinion, in which BRANCH and GRANT, Circuit Judges, joined.

NEWSOM, Circuit Judge:

Timothy Pate, who sometimes goes by the name "Akenaten Ali" and has described himself as an "heir to the kingdom of Morocco," filed liens against property owned by a slew of people he thought had wronged him—including, as relevant here, a former Commissioner of the IRS and a former Secretary of the Treasury. Pate was thereafter charged with and convicted of violating 18 U.S.C. § 1521, which criminalizes the filing of retaliatory liens against the property of "an individual described in" 18 U.S.C.

§ 1114, which, in turn, refers to "any officer or employee of the United States."

To resolve Pate's appeal, we must decide whether a *former* civil servant counts as an "officer or employee of the United States" within the meaning of § 1114 and, thus, of § 1521. We hold that the answer is no. Accordingly, we vacate Pate's convictions on four counts and remand for resentencing.

**I**

**A**

Timothy Pate didn't file any federal income-tax returns in 2011. Or in 2012. Or in 2013 or 2014. In 2015, though, he filed a return in which he reported no wages or salary but $4.5 million in taxable interest income—and claimed a refund in the amount of $2.7 million. The IRS warned him that his frivolous return could lead to a $10,000 fine. Apparently undeterred, Pate filed similarly frivolous returns in the ensuing years. He also claimed millions of dollars in refunds on those returns and refused to pay the penalties that he had racked up along the way.

Pate's frustration with the IRS led him to sue then-Commissioner John Koskinen in federal district court. In his complaint, Pate insisted that he wasn't an American citizen and that the IRS owed him money. He also threatened to file liens against anyone who opposed his efforts to collect.

Pate made good on that threat. According to the indictment here, he filed 16 liens against current and former government

officials. Four of those liens underlie this appeal. In 2018, months after Koskinen had completed his tenure as IRS Commissioner, Pate filed two $33 million liens against his property. Pate also filed two $15 million liens against the property of the former Secretary of the Treasury, Jacob Lew. Like Koskinen, Lew had wrapped up his time in office in 2017, months before Pate filed the liens. The district court dismissed Pate's civil suit, declared his liens null and void, expunged them from the record, and enjoined him from filing any more.

**B**

A grand jury later indicted Pate on 21 counts—16 of them for filing false retaliatory liens against federal officials in violation of 18 U.S.C. § 1521. The government's case took three days, included 16 witnesses, and featured 136 exhibits. Pate didn't put on a defense. He did, however, move for a directed verdict on the four § 1521 counts involving Koskinen and Lew, arguing that because they "were not public officials at the time that the . . . false lien[s were] filed . . . as required by the statute," he couldn't be lawfully convicted under § 1521. In response, the government argued that it would be "ridiculous" if the criminality of Pate's conduct turned on the timing of his victims' retirements.

The district court wrestled at some length with Pate's argument, which, it said, was "not by any stretch . . . frivolous." Ultimately, though, the court concluded (1) that § 1521's language prohibits filing liens against even a former officer or employee "on account of the performance of [his] official duties" and (2) that a

reasonable jury could conclude that Pate filed the liens against Koskinen and Lew "on account of" their governmental duties. Accordingly, the district court denied Pate's motion for a directed verdict. The jury went on to find Pate guilty on all 21 counts, and the court sentenced him to 300 months in prison.

Pate timely appealed to this Court challenging his § 1521 convictions related to Koskinen and Lew, arguing—as he did before the district court—that because they weren't officers or employees of the United States at the time that he filed liens against their property, the statute didn't criminalize his conduct. A divided panel rejected Pate's position and affirmed his convictions, holding that § 1521 covers both current and former federal officers and employees. *See United States v. Pate*, 43 F.4th 1268, 1269 (11th Cir. 2022). A majority of the active judges of this Court subsequently voted to vacate the panel's opinion and rehear the case en banc, *see United States v. Pate*, 56 F.4th 1336, 1337 (11th Cir. 2023), and we directed the parties to address the following question: "Does 18 U.S.C. § 1521 apply to false liens filed against former federal officers or employees for official duties they performed while in service with the federal government?"

**II**

Before us, Pate renews his challenges to the § 1521 convictions pertaining to Koskinen and Lew, again contending that because they were no longer officers or employees of the United

States at the time he filed liens against their property, the statute is inapplicable. For the reasons that follow, we agree with him.[1]

**A**

We begin with the statute of conviction, 18 U.S.C. § 1521, which states, in relevant part, that

> [w]hoever files . . . any false lien or encumbrance against the real or personal property of an individual described in section 1114, on account of the performance of official duties by that individual, knowing or having reason to know that such lien or encumbrance is false . . . shall be fined under this title or imprisoned for not more than 10 years, or both.

18 U.S.C. § 1521.

By its terms, § 1521 prescribes three necessary conditions to criminal liability: first, the defendant must have filed a "false lien or encumbrance" that he "kn[ew] or ha[d] reason to know" was false; second, he must have filed it against the property of "an individual described in section 1114"; and third, he must have done so "on account of" that individual's performance of official duties. Pate doesn't dispute the first or third conditions—that the liens he filed against Koskinen's and Lew's property were "false" or that he filed them "on account of" Koskinen's and Lew's performance of their

---

[1] "Whether a defendant can properly be prosecuted for a violation of a particular statute is a question of law subject to *de novo* review by this court." *United States v. Kirkland*, 12 F.3d 199, 202 (11th Cir. 1994) (per curiam).

official duties. He does deny, however, that § 1521's second condition is satisfied—Koskinen and Lew, he insists, are not "individual[s] described in section 1114."

To understand that reference, we turn to 18 U.S.C. § 1114. As amended and streamlined in 1996, that provision reads as follows:

> Whoever kills or attempts to kill any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that assistance, shall be punished . . . .

18 U.S.C. § 1114; *see also United States v. Feola*, 420 U.S. 671, 679–82 (1975) (explaining a predecessor statute's history); *United States v. Bedford*, 914 F.3d 422, 427 n.2 (6th Cir. 2019) (noting that Congress streamlined the statute in 1996 and replaced "a lengthy list of specific federal officers and employees" with the present language).

Sections 1114 and 1521 provide the field of battle. On, then, to the parties' positions.

Pate's argument is straightforward. First, he contends that when he filed the retaliatory liens against their property, Koskinen and Lew were no longer in government service. Second, he says that because they were retired at the time, they weren't "officer[s]

or employee[s] of the United States" within the meaning of § 1114. Thus, he concludes, § 1521 didn't forbid him from filing the liens.

For its part, the government denies the relevance of a victim's job status at the time a retaliatory lien is filed. The key question, it insists, is *why* the lien was filed, not *when* it was filed: So long as the lien was filed "on account of" the victim's official actions, he qualifies as an "employee or officer of the United States" for purposes of § 1114 and, as a result, is protected by § 1521. Because Pate filed the liens at issue here "on account of" Koskinen's and Lew's official actions, the government says, his convictions must stand.

As we read §§ 1114 and 1521, Pate has the better of the argument. To explain why, we'll start by examining § 1521's reference to "an individual described in section 1114" in detail and, in particular, why that reference doesn't include former federal officers or employees. We'll then consider the government's contrary contentions.

**B**

As the Supreme Court recently reiterated, "[w]hen called on to resolve a dispute over a statute's meaning, [a court] normally seeks to afford the law's terms their ordinary meaning at the time Congress adopted them." *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1480 (2021). Put another way, we "ask how a reasonable person, conversant with the relevant social and linguistic conventions, would read the text in context." John F. Manning, *The Absurdity Doctrine*, 116 Harv. L. Rev. 2387, 2392–93 (2003).

Here, that means we seek the ordinary meaning of the key phrase in § 1114, which § 1521 incorporates by reference: "any officer or employee of the United States." And more particularly, we ask whether that phrase—as used here, and in context—would be understood by the average speaker of American English to include *former* officers or employees of the United States. We conclude that it wouldn't.

**1**

We begin with the statutory phrase's constituent parts. With respect to the term "officer," at least, the Dictionary Act provides a helpful starting point. It explains that "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise . . . 'officer' includes any person authorized by law to perform the duties of the office." 1 U.S.C. § 1. After one leaves office, of course, he's no longer "authorized by law to perform the duties of the office." So the Dictionary Act gives us one good reason to think that § 1114's reference to federal "officer[s]" is best read to mean *current* officers.

Contemporaneous dictionary definitions of both "officer" and "employee" likewise indicate currency. Consider the present-tense verbs (with our emphasis) used to explain those terms. In the mid-1990s, the *Oxford English Dictionary*, for instance, defined "officer" as a "one . . . who *performs* a duty, service or function." Oxford English Dictionary (2d ed. 1989). *Black's Law Dictionary* was similar: An "officer" was a "[p]erson *holding* an office of trust, command or authority in corporation, government, armed services, or

other institution or organization," and an "employee" was "[o]ne who *works* for an employer; a person *working* for salary or wages." Black's Law Dictionary (6th ed. 1990). The popular and legal dictionaries' concurrence is powerful evidence of those terms' ordinary meanings. *See, e.g.*, *Spencer v. Specialty Foundry Prods. Inc.*, 953 F.3d 735, 740 (11th Cir. 2020). Here, those sources indicate that the terms "officer" and "employee" refer to those presently holding office or employed, not those who formerly held office or were so employed.

As does evidence from everyday usage—which, while not conclusive, is certainly relevant. *See United States v. Obando*, 891 F.3d 929, 934 (11th Cir. 2018) ("Words are to be understood in their ordinary, everyday meanings." (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 69 (2012))); *United States v. Caniff*, 916 F.3d 929, 941 (11th Cir. 2019) (Newsom, J., concurring in part and dissenting in part) (emphasizing "how people talk"), *vacated and superseded*, 955 F.3d 1183 (11th Cir. 2020). We federal judges, for example, had jobs before we came to the bench. Some of us worked in private practice, others in state government, and still others in academia. But it would be passing strange to describe a judge as an "employee" of the law firm or university for which he used to work. And it would be stranger still to describe a *federal* judge as an "officer" of the *state* she used to serve. A hypothetical underscores the common-parlance point: Imagine a law prohibiting any "officer or employee" of the IRS from taking money from accounting firms. Imagine further that on the very same day that Pate filed a lien against him, Koskinen

had accepted a job with one of the Big Four that came with a generous signing bonus. Would we think that Koskinen had violated the law? Of course not. Reasonably read, our hypothetical statute's prohibition on taking money from accounting firms ended when Koskinen retired from government service. At least on its face, there's no reason to think that § 1114 operates any differently.

**2**

To the extent that § 1114's plain language leaves any doubt that it covers only current "officer[s]" and "employee[s]," the evidence from statutory context resolves it. Significantly, § 1521 isn't the only federal criminal statute that cross-references and incorporates § 1114. So, too, do 18 U.S.C. § 111 ("Assaulting, resisting, or impeding certain officers or employees") and 18 U.S.C. § 115 ("Influencing, impeding, or retaliating against a Federal official by threatening or injuring a family member"). Notably, though, both of those provisions—quite unlike § 1521—were amended in 1988 to bring explicitly within their coverage individuals "who formerly served as . . . person[s] designated" in § 1114. *See* Pub. L. No. 100-690, § 6487(a), (f), 102 Stat. 4181, 4386 (1988) (codified as amended at 18 U.S.C. §§ 111(a)(2), 115(a)(2)).

What to make of that conspicuous difference between § 1521, on the one hand, and §§ 111 and 115, on the other? Let's start with the obvious: The cross-references in §§ 111 and 115 make perfect sense on Pate's plain-meaning reading of § 1114—they refer to an individual "who formerly served as [an officer or employee of the United States]." The government's interpretation,

by contrast, makes nonsense of them; on its reading, those statutes cover any individual "who formerly served as [a former officer or employee of the United States]." Because, in the government's view, § 1114 has *always* included former officers and employees, § 111's and § 115's specific references to former officers and employees are redundant and superfluous. *But see Duncan v. Walker*, 533 U.S. 167, 174 (2001) (emphasizing that courts must "give effect, if possible, to every clause and word of a statute" (citation and quotation marks omitted)).

What's more, the fact that Congress chose to amend § 111's and § 115's cross-references to § 1114 to include former officers and employees indicates that absent some similar modification, § 1521 doesn't cover them. Indeed, an entire "family of canons" underscore that commonsense point. *See Freemanville Water Sys., Inc. v. Poarch Band of Creek Indians*, 563 F.3d 1205, 1209 (11th Cir. 2009). First, "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Id.* (citation and quotation marks omitted). And as now-Justice Kavanaugh has explained, "[t]he dissimilar language need not always have been enacted at the same time or found in the same statute" to warrant that presumption—at least where, as here, the provisions exist within the same field of legislation. *United States v. Papagno*, 639 F.3d 1093, 1099 n.3 (D.C. Cir. 2011) (cataloging examples). Second, and relatedly, "where Congress knows how to say something but chooses not to, its silence is controlling." *Freemanville*, 563 F.3d at

1209 (citation and quotation marks omitted). Third, "when Congress uses different language in similar sections, it intends different meanings." *Id.* (citation and quotation marks omitted). And finally, the capper: "Congress' clear ability to modify [a] term . . . to indicate the type thereof in other instances"—as it clearly demonstrated by expressly referencing "former[]" officers and employees in §§ 111 and 115—"and the fact that it did not do so in the disputed phrase"—as it plainly didn't in § 1521—signifies "that it had no intention to so limit the term" in the latter instance. *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1226 (11th Cir. 2001) (citation and quotation marks omitted) (omission and first alteration in original).

The structural point is thus quite straightforward: The language that Congress employed in §§ 111 and 115—referring to those who "formerly served as a person designated" in § 1114—would support Pate's convictions if it existed in § 1521. Conspicuously, though, it doesn't, and so it can't. To the contrary, the absence of any similar reference to formers in § 1521 confirms that, for better or worse, it doesn't cover them.[2]

---

[2] The government asserts that the comparison to §§ 111 and 115 is inapt because those statutes "create[] two different crimes"—one for conduct perpetrated against current officers and employees and another for conduct perpetrated against formers. *See* En Banc. Br. for Appellee at 45. Respectfully, we aren't persuaded. First, there aren't separate crimes in §§ 111 and 115; there are just different classes of possible victims. Second, if § 1114 already (and by its very nature) included former officers and employees, as the government insists it does, there wouldn't have been any need to create separate crimes specifically covering them. And yet, on the government's own reading, in

* * *

To sum up: The best evidence from statutory text, context, and structure demonstrates that former officers and employees aren't among the "individual[s] described in section 1114" and, accordingly, that § 1521 didn't prohibit Pate's conduct.

### C

The government presents several arguments in favor of reading § 1114—and thus § 1521—to include former officers and employees. None is persuasive.

#### 1

First, the government offers its own assessment of § 1114's text and structure, pursuant to which that statute *can* cover "both current and former employees depending on when and why the defendant committed the crime against them." En Banc Br. of Appellee at 16. The government concedes, as it must, that § 1114 "does not explicitly state whether it protects only current, or also former, federal employees." *Id.* But it proposes a two-track reading of § 1114 that, the theory goes, permits § 1521 to reach former officers and employees.

---

§§ 111 and 115 Congress did just that. Third, if Congress had wanted to protect former officers and employees against false liens, it could have amended § 1521 in just the same way it amended §§ 111 and 115—namely, to create a new subsection expressly bringing formers within its ambit. For whatever reason, it didn't.

The key distinction, the government asserts, is between (1) crimes committed "while [an] officer or employee is engaged in . . . the performance of [his] official duties" and (2) those committed "on account of the performance of official duties." 18 U.S.C. § 1114(a). The first plainly includes a temporal element—hence the "while." According to the government, that piece of § 1114 captures crimes committed "while, meaning at the same time that, the victim is working as a federal employee," and thus excludes crimes against former federal officers and employees. En Banc Br. of Appellee at 17.

By contrast, the government continues, § 1114's "on account of" clause contains no temporal element—only a causal one. So long as a victim is targeted "on account of" his official actions, whether he's a current or former civil servant is immaterial. Accordingly, the argument goes, "on account of" crimes can be committed against former federal officers and employees—the perpetrator's motive is all that matters. And, the government says, § 1521's "protection of former federal employees is even more certain than" § 1114's because § 1521 prohibits *only* those liens filed "on account of" a victim's performance of official duties. *Id.* at 19.

Though plausible at first blush, the government's interpretation doesn't withstand careful scrutiny. Most immediately, it makes a hash of § 1114's syntax and internal structure. By its terms, § 1114 prescribes two necessary conditions: first, the victim must *be* a federal "officer or employee"; second, and separately, the officer-or-employee victim must have been targeted either (a) "while

. . . engaged in" or (b) "on account of" the "performance of official duties." As a matter of simple logic, proof of one of the two secondary conditions doesn't ipso facto satisfy the primary condition. Accordingly, even if the government can demonstrate that an officer-or-employee victim was targeted either "while [he was] engaged in" or "on account of" his performance of official duties, it must still prove that the victim *was* an "officer or employee" within the meaning of § 1114's opening line. The "while engaged in" and "on account of" clauses, that is, limit the class of "officer[s and] employee[s]" protected by the statute; they can't expand the scope of that phrase beyond its ordinary meaning.

The government is correct, of course, that the "while engaged in" clause applies, by definition, "only if the victim is a current federal employee," inasmuch as "someone who is no longer employed by a federal agency cannot be engaged in official federal duties." En Banc Br. of Appellee at 17. But it's a non sequitur to assert, as the government does, that because the "while engaged in" clause doesn't cover former officers and employees, the "on account of" clause must do so. To the contrary, the "on account of" clause applies quite naturally, and consistently with the ordinary meaning of the phrase, to current "officer[s and] employee[s]"—imagine, for instance, an attack on a federal law enforcement officer whose earlier undercover work led to a successful prosecution.

In much the same way, the government's reading also defies § 1521's structure. That provision, recall, forbids filing "any false

lien or encumbrance against the real or personal property of an individual described in section 1114, on account of the performance of official duties by that individual." 18 U.S.C. § 1521. Thus, as already explained, § 1521, like § 1114, prescribes multiple necessary conditions to liability: The government must establish (1) that the defendant filed a "false lien or encumbrance" that he "kn[ew] or ha[d] reason to know" was false, (2) that he filed it against the property of "an individual described in section 1114," and (3) that he did so "on account of" that individual's performance of official duties. On the government's reading, whenever § 1521's third condition is met, the second must be, too. But again, that doesn't follow. Even if the government can prove the "on account of" condition—which, to repeat, Pate doesn't contest—it must separately prove that the false-lien victim was "an individual described in section 1114"—*i.e.*, an "officer or employee of the United States."

What's more, the government's stitched-together statute makes little (which is to say no) grammatical sense. Where § 1521 says "an individual described in section 1114," the government would seemingly insert the *entirety* of § 1114. Accordingly, as relevant here, the government's hybrid would read like this:

> Whoever files . . . any false lien or encumbrance against the real or personal property of [any officer or employee of the United States . . . while such officer or employee is engaged in or on account of the performance of official duties] on account of the performance of official duties by that individual . . . shall be

> fined under this title or imprisoned for not more than 10 years, or both.

The government's reading perversely renders § 1521's own coverage provision superfluous because it results in stacking two "on account of the performance of official duties" clauses on top of one another. To be sure, "[s]ometimes the better overall reading of the statute contains some redundancy," but where "one possible interpretation of a statute would cause some redundancy and another interpretation would avoid redundancy, that difference in the two interpretations can supply a clue as to the better interpretation of a statute." *Rimini St., Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 881 (2019). Here, only the government's proposed interpretation creates the weird "on account of" repetition. Because we usually presume that Congress doesn't use needless words, *see* Scalia & Garner, *Reading Law*, *supra*, at 174–76, and the government has given us little reason to think otherwise here, that's yet another reason to reject its reading of § 1521.

For all these reasons, we conclude that the government's labored interpretation of §§ 1114 and 1521 stretches them beyond the breaking point, and we therefore reject it.[3]

---

[3] There is one loose interpretive end: The government points to § 1114(a)'s closing clause, which protects "any person assisting . . . an officer or employee in the performance of [official] duties or on account of that assistance." 18 U.S.C. § 1114(a). That clause, the government says, "does not limit its protection of [the] . . . assistant to the time that the federal employee remains in active service" and "thus gives private victims essentially perpetual protection against criminal retaliation on account of their assistance with official duties."

**2**

Statutory text and structure aside, the government insists that existing caselaw supports its interpretation. For reasons we'll explain, we disagree.

The government particularly emphasizes the Fifth Circuit's decision in *United States v. Raymer*, 876 F.2d 383 (5th Cir. 1989). There, a defendant appealed his conviction for threatening a probation officer in violation of 18 U.S.C. § 115, a statute that referenced the version of § 1114 then in effect. *Id.* at 384–85. Faced with the question whether retired probation officers fell within § 1114's ambit, the Fifth Circuit started (oddly to the modern eye) with the statute's legislative history, which it found inconclusive. *Id.* at 389–

---

En Banc Br. of Appellee at 21. And, the government continues, it would be "anomalous" to give "greater protection to a private person who once assisted with a single official duty than . . . to a federal official who rendered years of devoted service to the nation." *Id.* at 22.

Because this case doesn't concern an "assist[ant]"—no one contends that Koskinen and Lew were anything other than former "officer[s] or employee[s]"—we needn't decide here the temporal scope of § 1114(a)'s "assisting" clause. We can say, though, that giving assistants an additional dose of protection, if only as a means of incentivizing their cooperation, wouldn't be so patently absurd as to warrant ignoring the balance of the textual, contextual, and structural evidence. Because "[c]ourts should not be in the business of rewriting legislation, . . . we apply the absurdity doctrine only under rare and exceptional circumstances"—namely, "where a rational Congress could not conceivably have intended the literal meaning to apply." *Vachon v. Travelers Home & Marine Ins.*, 20 F.4th 1343, 1350 (11th Cir. 2021) (Pryor, C.J., joined by Lagoa, J., concurring) (citations and quotation marks omitted) (omissions accepted).

90. Without legislative history to guide it, the court lamented, it was "left with the plain language of the statute." *Id.* at 390. It then reasoned that because the statute was properly read to cover off-duty officials, it must also include a "retired official"—the latter, the court reasoned, being different from the former only in that retirees are "in a sense permanently off-duty." *Id.* And, the court added, covering former officials accorded with what it called the statute's "obvious purpose" of "free[ing] public officials from retaliation for their official acts." *Id.* at 391.

With respect, we find *Raymer* wholly unpersuasive—and the government's contention that Congress has somehow ratified it in the intervening decades even more so. Beginning with *Raymer* itself, we see multiple problems. As an initial matter, the Fifth Circuit there relied heavily on what it took to be § 1114's "obvious purpose," but purposes, obvious or otherwise, provide no basis for skirting a statute's plain language. And as the Supreme Court has reminded us, to the extent a statute's purpose is relevant, "[t]he best evidence of that purpose is the statutory text adopted by both Houses of Congress and submitted to the President." *West Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 98 (1991); *see also United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95 (1820) (Marshall, C.J.) ("The intention of the legislature is to be collected from the words they employ."). *Raymer*'s appeals to statutory purpose thus do nothing to alter our plain-text reading of § 1114.

Nor are we convinced by the *Raymer* court's contention that retired officials should be treated like off-duty officials—and thus

covered by § 1114—because they are just "permanently off-duty." 876 F.2d at 390. A retired officer, in fact, is fundamentally different from an off-duty officer: One is on the payroll, the other isn't; one will be back "on duty" in short order, the other won't; one is actively engaged in the work of the federal government, the other isn't. Moreover, and in any event, no amount of functional similarity between off-duty and retired officers can make § 1114 say what it doesn't say.

Whatever *Raymer*'s merits or demerits, the government separately contends that Congress ratified the Fifth Circuit's interpretation of § 1114 when it enacted § 1521. We don't think so. As an initial matter, "we walk on quicksand when we try to find in the absence of corrective legislation a controlling legal principle." *Helvering v. Hallock*, 309 U.S. 106, 121 (1940). That is doubly so when we are asked to take guidance from Congress's silence in the wake of decisions issued by what the Constitution calls "inferior Courts." U.S. Const. art. III, § 1. While it's true that the buck often stops with us middle managers, there's scant empirical support for the proposition that when Congress legislates, it does so with individual circuit-court decisions in mind. *See* Amy Coney Barrett, *Statutory Stare Decisis in the Courts of Appeals*, 73 Geo. Wash. L. Rev. 317, 331 (2005) ("Empirical research shows fairly conclusively . . . that Congress is generally unaware of circuit-level statutory interpretations."). Accordingly, there's no strong normative case for the proposition that Congress's silence concerning § 1114 or its subsequent enactment of § 1521 should be understood as an endorsement of *Raymer*. *Cf. Jerman v. Carlisle, McNellie, Rini, Kramer &*

*Ulrich LPA*, 559 U.S. 573, 607 (2010) (Scalia, J., concurring in part and concurring in the judgment) ("It seems to me unreasonable . . . to assume that, when Congress has a bill before it that contains language used in an earlier statute, it is aware of, and approves as correct, a mere three Court of Appeals decisions interpreting that earlier statute over the previous nine years.").[4]

We find the government's reliance on *United States v. Feola*, 420 U.S. 671 (1975), equally misplaced. The Supreme Court's decision there is pretty far afield to begin with, in that it involved an examination of (1) the scienter element (2) of a conspiracy charge (3) pertaining to a different underlying statute, 18 U.S.C. § 111. Notably, there was no question in that case that the victim—an undercover narcotics agent who was assaulted while engaged in a sting operation—was, in fact, a federal officer at the time the crime was committed against him. The Court's lone holding was that § 111—which, as already explained, cross-references § 1114—didn't

[4] The government also relies on two other out-of-circuit authorities that cite *Raymer*—*United States v. Martin*, 163 F.3d 1212 (10th Cir. 1998), and *United States v. Wolff*, 370 F. App'x 888 (10th Cir. 2010). Neither moves the needle. *Martin* addressed threats made against a local policeman who had been deputized to participate in an FBI investigation at "the time the charged conduct occurred"—*i.e.*, at the time he was threatened. 163 F.3d at 1215. To the extent that the panel there addressed the former-employee issue at all, it did so only in the "alternative[]," only in connection with the policeman's "assist[ance]" of federal officials (which, as we have explained, may present a different interpretive question, *see supra* note 3), and only by rote citation to *Raymer*. *See id.* So too, when *Wolff* (an unpublished opinion) adopted *Raymer*'s logic, it did so without any additional analysis of the statutory text or context. *See* 370 F. App'x at 895–96.

require proof that his assailant *knew* that the victim was a federal officer. 420 U.S. at 684. To be sure, along the way, the Court observed that Congress enacted § 1114 with the dual aims of "protect[ing] both federal officers and federal functions." *Id.* at 679. And the nod to "federal functions" presumably explains why lower courts have held that local police officers targeted while acting as deputies to the federal government (or for actions taken while deputized) count as "federal officers" within the meaning of § 1114. *See, e.g.*, *United States v. Luna*, 649 F.3d 91, 101 (1st Cir. 2011); *United States v. Martin*, 163 F.3d 1212, 1215 (10th Cir. 1998). But we've already rejected the suggestion that a concern for "federal functions" should be read for all it might be worth. In *United States v. Kirkland*, for instance, we held that a "federal functions"-based argument couldn't overcome the express language of a previous version of § 1114 and, on that basis, refused to count contract postmen as "officer[s] or employee[s] of the Postal Service." 12 F.3d 199, 202–03 (11th Cir. 1994). Although *Kirkland* doesn't squarely control here, it counsels against overreading *Feola*'s "federal functions" reference, as we think the government does.

**3**

Without strong textual or precedential arguments, the government retreats to "that last redoubt of losing causes, the proposition that the statute at hand should be liberally construed to achieve its purposes." *Director, Off. of Workers' Comp. Programs v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 135 (1995). Indeed, by our count, the government's brief invokes § 1114's and § 1521's supposed "purposes" more than 20 times. Chief among

those "laudatory purposes," the government says—channeling *Feola*'s dictum—is "maximum protection for federal officers and federal functions." En Banc Br. of Appellee at 29–30, 37. And to advance that goal, the government insists, we should construe §§ 1114 and 1521 to protect former officers and employees.

For the same reasons we found *Raymer*'s purposivism unpersuasive, we reject the government's invitation to stretch the text. Because "no legislation pursues its purposes at all costs," *Rodriguez v. United States*, 480 U.S. 522, 525–26 (1987), we can't just do whatever would further the purposes that the government attributes to Congress. Doing so would ignore the fact that "the textual limitations upon a law's scope are no less a part of its 'purpose' than its substantive authorizations." *Kucana v. Holder*, 558 U.S. 233, 252 (2010) (citation and quotation marks omitted).

That is perhaps especially so in the criminal context. Courts have long recognized that "before a man can be punished as a criminal under the federal law his case must be plainly and unmistakably within the provisions of some statute." *United States v. Gradwell*, 243 U.S. 476, 485 (1917) (quotation marks omitted). So here, we reiterate with particular emphasis what is always true: "Elevating general notions of purpose over the plain meaning of the text is inconsistent with our judicial duty to interpret the law as written." *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 970 (11th Cir. 2016) (en banc). "[A]s written," § 1114 doesn't cover former federal officers and employees, and § 1521 thus doesn't prohibit the filing of false liens against their property.

**D**

None of this, of course, is to say that the terms "officer" and "employee" can *never* include formers. And indeed, as the government points out, the Supreme Court has twice held that they can. But a careful examination reveals that the (civil) statutes at issue in those two cases were different in important respects from §§ 1114 and 1521.

First, *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997). There, the Supreme Court held "that the term 'employees,' as used in § 704(a) of Title VII, is ambiguous as to whether it includes former employees." *Id.* at 346. Faced with that ambiguity, the Court concluded that it was "more consistent with the broader context of Title VII and the primary purpose of § 704(a)" to hold "that former employees are included within § 704(a)'s coverage." *Id.* Critically, though, in so holding, the Court relied on solid textual indicators that "employee" carried a broader meaning "as used in § 704(a)." *Id.* at 339, 341, 346. In particular, the Court emphasized that under Title VII, "employees" have access to remedial mechanisms for "discriminatory discharge," including "reinstatement." *Id.* at 342–43, 345. Because a claim "alleging unlawful discharge would necessarily be brought by a former employee," the Court held that it made sense to interpret the term "employees" in § 704(a) as including formers. *Id.* at 345. For reasons we have explained at length, no such compelling textual evidence exists here.

*Davis v. Michigan Department of Treasury*, 489 U.S. 803 (1989), may present a closer case, but it too is distinguishable. There, the

Supreme Court considered whether retirement benefits paid to former federal employees came within the ambit of the following statute:

> The United States consents to [state] taxation of pay or compensation for personal service as an officer or employee of the United States . . . if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation.

4 U.S.C. § 111(a).

In rejecting the state's contention that this provision covered only "current employees of the Federal Government, not . . . retirees," the Court emphasized not just the statute's "words" but also—and notably—"their place in the overall statutory scheme." *Davis*, 489 U.S. at 808–09. In particular, the Court observed, the provision's "first part" applied "by its terms . . . to 'the taxation of pay or *compensation for personal services as an officer or employee* of the United States.'" *Id*. at 808 (emphasis in original). Because retirements benefits "are deferred compensation earned 'as' a federal employee," the Court said, the statute was properly understood to cover them. *Id*. The Court acknowledged the state's argument that because the provision's "latter part" referred more starkly (and without any "as"-like lookback) to an "officer or employee," it should be read to "appl[y] only to current federal employees." *Id*. at 809. But, the Court sensibly held, the provision's "latter" part had to be understood in light of its "first part"—*i.e.*, to refer to the *same* "pay or compensation" and the *same* "officer or employee":

> The reference to "*the* pay or compensation" in the last clause of § 111 must, in context, mean the same "pay or compensation" defined in the first part of the section. Since that "pay or compensation" includes retirement benefits, the nondiscrimination clause must include them as well.

489 U.S. at 809.

To be sure, § 1521 bears some resemblance to the tax statute at issue in *Davis* in that (1) both refer to an act taken against an "officer or employee of the United States" and (2) both require some relationship between that act and government service—"compensation for personal service as an officer or employee" in the tax provision, liens filed "on account of" official actions in § 1521. Importantly, though, the textual, contextual, and structural indications in *Davis* were very different from those here. For one thing, the provisions' internal syntactical structures are each other's diametric opposites: As just explained, the tax statute's lead clause referred generally to "pay or compensation for personal service as an officer or employee"—a phrase that is reasonably read to cover formers—and the Court sensibly interpreted the follow-on clause's reference to "the officer or employee" to point back to the *same* compensation and the *same* individual. Conversely, § 1521's primary prohibition is on the filing of false liens against (by reference to § 1114) an "officer or employee of the United States," which it *then* limits to those filed "on account of the performance of official duties by that individual." *Davis* turned on the principle that readers naturally understand subsequent phrases in light of

antecedent ones. Just so here. But in *Davis*, the phrase "officer or employee" was the subsequent; in § 1114, it's the antecedent. We would be letting the tail wag the dog were we to permit § 1114's "on account of" corollary to expand the scope of the very category—"officer[s] or employee[s]"—that it purports to limit. Add to all that the reasonable inferences drawn from the linguistic differences between 18 U.S.C. §§ 111 and 115, on the one hand, and § 1521, on the other—none of which existed in *Davis*—and it becomes clear that the Supreme Court's decision there does not meaningfully support the government's position here.

* * *

Taken together, then, *Robinson* and *Davis* establish that words like "officer" and "employee" can sometimes include formers—but only when the statutory context makes clear that they should. Neither suffices to show that the ordinary meaning of those terms includes ex-officers or erstwhile employees. Here, given the absence of textual indicia supporting a broader reading of the terms, we decline to adopt the government's strained interpretation. *Cf. Nichols v. United States*, 136 S. Ct. 1113, 1118 (2016) ("As we long ago remarked in another context, '[w]hat the government asks is not a construction of a statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope. To supply omissions transcends the judicial function.'" (quoting *Iselin v. United States*, 270 U.S. 245, 251 (1926) (alteration in original)).

### III

"The statute says what it says—or perhaps better put here, does not say what it does not say." *Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 138 S. Ct. 1061, 1069 (2018). Because Pate filed the liens at issue when Koskinen and Lew were no longer government "officer[s] or employee[s]" within the meaning of § 1114, his conduct (however improper) wasn't covered by 18 U.S.C. § 1521. Accordingly, we vacate his § 1521 convictions pertaining to the liens filed against Koskinen's and Lew's property and remand for resentencing.

**VACATED AND REMANDED.**

ROSENBAUM, Circuit Judge, joined by WILLIAM PRYOR, Chief Judge, and NEWSOM, Circuit Judge, concurring:

I concur in full with the well-reasoned Majority Opinion. I write separately to underscore the problems with appealing to statutory purpose to expand the textually clear scope of criminal liability under 18 U.S.C. §§ 1114 and 1521: relying solely on congressional purpose collides with bedrock principles of due process and the separation of powers.

The "first essential of due process" is that "statutes must give people 'of common intelligence' fair notice of what the law demands of them." *United States v. Davis*, 139 S. Ct. 2319, 2325 (2019) (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)). Without a clear articulation, or "fair warning" of what the law proscribes, the average citizen is unable to determine whether certain conduct is or is not illegal. As Justice Holmes put it, "[a]lthough it is not likely that a criminal will carefully consider the text of the law before he murders or steals, it is reasonable that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed." *McBoyle v. United States*, 283 U.S. 25, 27 (1931). "To make the warning fair," he continued, "so far as possible the line should be clear." *Id.*

"The underlying principle" behind the fair-warning requirement, the Court has explained, "is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *Bouie v. City of Columbia*, 378 U.S. 347,

351 (1964) (quoting *United States v. Harriss*, 347 U.S. 612, 617 (1954)). But in imposing criminal liability, relying solely on Congress's purpose in enacting a statute would threaten to vitiate that principle. In particular, the government repeatedly emphasizes the statute's purported purpose, to provide "maximum protection of federal functions and federal officials." En Banc Br. of Appellee at 29–32. And because of that purpose, the argument goes, we should ignore the plain text and instead interpret §§ 1114 and 1521 to capture former federal officials.

Then, the government suggests charging ordinary citizens with discerning Congress's purpose here from reviewing the Supreme Court's decision in *United States v. Feola*, 420 U.S. 671 (1975).[1] That's a case that doesn't even construe the provision Pate

[1] *Feola* holds that, to violate § 111, a citizen need not know that someone he assaults is a federal officer who is engaged in the performance of official duties. *See Feola*, 420 U.S. at 684. Judge Lagoa's Dissent asserts that this fact renders the usual notice requirement a nullity. Lagoa Dissent at 26. But this confuses the scienter requirement with notice that an act amounts to a federal crime. They are not one and the same. The lack of a scienter requirement in § 111 does not impair the legal notice the statute provides that it is a federal crime to assault someone who is a federal officer engaged in the performance of official duties. In other words, any citizen knows by reading § 111 that he commits a federal crime if he assaults a federal officer, even if he doesn't know the person he assaults is a federal officer. But under § 1521, the text of the statute does not inform a person that filing false liens against a former federal officer is a federal crime. So Pate could have read § 1521 and believed that any liens filed against Koskinen and Lew would not create federal criminal liability because the statute does not, on its face, protect former officers. And that is the due-process notice problem with construing the text to pertain to former officers when it does not.

is charged with violating. Rather, it interprets 18 U.S.C. § 111. So under the government's proposed approach, an ordinary citizen would be required to scour through caselaw interpreting all possibly related statutes to determine the purpose of the statute at issue in his own case. And even if the diligent citizen were able to figure out the statute's purpose, he would still then need to interpret the text in light of that purpose. But citizens are responsible for only knowing and abiding by the text Congress has enacted and the settled interpretations of that text. *See United States v. Lanier*, 520 U.S. 259, 267 (1997). That itself can be hard enough. *Cf. United States v. LaBonte*, 520 U.S. 751, 780 (1997) (Breyer, J., dissenting) ("The United States Criminal Code contains a highly complicated group of statutes.").

Time and again, the Supreme Court has emphasized that a criminal statute's text must be clear to impose liability in a constitutional manner. As Justice Robert Jackson explained, "[t]he spirit of the doctrine which denies to the federal judiciary power to create crimes forthrightly admonishes that we should not enlarge the reach of enacted crimes by constituting them from anything less than the incriminating components contemplated by the words used in the statute." *Morissette v. United States*, 342 U.S. 246, 249–50 (1952). *See also Boulware v. United States*, 552 U.S. 421, 434 (2008). Put another way, a criminal statute cannot be expanded beyond the text to reach a scenario that may be consistent with the statute's purpose based "upon the speculation that if the legislature had thought of it, very likely broader words would have been used." *McBoyle*, 283 U.S. at 27.

Justice Jackson's opinion in *Morissette* highlights yet another problem with the government's proposed expansion of §§ 1114 and 1521 beyond their plain text: violating the separation of powers. In our federal system, "[i]t is the legislature, not the Court, which is to define a crime, and ordain its punishment." *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95 (1820) (Marshall, C.J.); *Bousley v. United States*, 523 U.S. 614, 620–21 (1998) ("[U]nder our federal system it is only Congress, and not the courts, which can make conduct criminal."). If the statutory text, read in the context of the statute as a whole, does not by its terms prohibit certain conduct, we have no way of knowing that *Congress* prohibited that conduct.

And if we were to rely solely on whatever we construe the statute's purpose to be to broaden the statute's scope, we would be, in essence, rewriting the statute, rather than simply interpreting it. In other words, we would be usurping Congress's authority. *Davis*, 139 S. Ct. at 2325 ("Only the people's elected representatives in the legislature are authorized to 'make an act a crime.'" (quoting *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 34 (1812))); *United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 494 n.7 (2001) ("Because federal courts interpret, rather than author, the federal criminal code, we are not at liberty to rewrite it.").

If Congress believes that defendants like Pate should face liability for bringing false liens against former government officials, Congress knows how to say so. And it is free to amend § 1521, just

as it previously amended §§ 111 and 115 to shield former officials.[2] That is, if Congress really did enact § 1521 to provide "maximum protection" for federal officials, it can modify the text to ensure that the statute effectuates that purpose moving forward. But as a federal court, we cannot read the text broadly to impose criminal liability on Pate when Congress has not clearly criminalized his conduct.

To be sure, instances arise when courts can discern a statute's purpose as "derived from the text." *United States v. Bryant*, 996 F.3d 1243, 1257 (11th Cir. 2021). But courts do not rely solely on what they assume to be congressional purpose when they construe statutes. Here, though, that is what we'd have to do because the text itself does not support the reading that the government seeks to give it.

* * *

Citizens—including unsympathetic defendants—have concrete rights. One entitles them to receive fair notice when the law criminalizes conduct. And our structure of government separately ensures that citizens can be punished for only those acts that the *legislature* has criminalized. Because the statutes here do not

---

[2] *But see* Maj. Op. at 21–22 (explaining that "there's scant empirical support for the proposition that when Congress legislates, it does so with individual circuit-court decisions in mind").

criminalize the filing of false liens against former federal officials,[3] I concur in the Court's opinion today.

[3] That is not to say that one who files false liens is not subject to legal action under any applicable state laws.

BRASHER, Circuit Judge, concurring in part:

I concur with everything in the majority opinion except Part II.B.1. For the reasons explained in Judge Lagoa's dissenting opinion, I think the phrase "any officer or employee of the United States" may reasonably be interpreted—in the right context—to include former officers and employees. In my view, neither the Dictionary Act nor the dictionaries cited in the majority opinion help resolve whether we should interpret this phrase in Section 1114 to cover former officers and employees. Nonetheless, I think the broader context of Section 1114 favors Pate's interpretation. In particular, I find it highly persuasive that other statutes also protect persons listed in Section 1114, but those statutes separately and expressly cover *former* officers and employees. As the majority explains, the government's reading of Section 1114 "would make nonsense" of those statutes. That is, we would have to read them to cover anyone "who formerly served as a [former officer or employee of the United States]." Because we must "look to the entire statutory or regulatory context" when we interpret a phrase in a statute, *Sec. & Exch. Comm'n v. Levin*, 849 F.3d 995, 1003 (11th Cir. 2017), I cannot say that Section 1114 is best read to cover former officers or employees.

GRANT, Circuit Judge, joined by BRANCH and LAGOA, Circuit Judges, dissenting:

I join in full the excellent primary dissent written by Judge Lagoa. I write separately to emphasize the illogical consequences introduced by the majority's hypertechnical reading and to put a finer point on why a comparison between this statute and two other provisions of Title 18 should not derail us from concluding that the best reading of § 1521 covers acts targeting both current and former federal officials.

**I.**

When interpreting words like "officer" and "employee" in federal statutes we cannot default to the assumption that those terms operate only in the present tense, including current but not former officials. The Supreme Court's own precedents make that clear. After all, in *Robinson v. Shell Oil Co.*, the Court held that the term "employees" includes former employees in the context of one statute, and in *Davis v. Michigan Department of Treasury* it held that the words "officer" and "employee" refer to both current and retired personnel in yet another statute. 519 U.S. 337, 346 (1997); 489 U.S. 803, 808–10 (1989). Dictionaries were not enough. *See Robinson*, 519 U.S. at 342. In both cases, the Supreme Court used an array of interpretive tools to conclude that the terms "officer" and "employee" encompassed former as well as current officers and employees: "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341; *see also Davis*, 489 U.S. at 808–10.

Those tools lead to the same answer here—§ 1521 is best read to include former as well as current federal officials. I will not restate all of the helpful analysis offered in the primary dissent, but will provide some background context for my broader point that the majority's approach skips some interpretive tools and overextends others.

To start, according to the Supreme Court itself, the term "employees" on its own lacks a "temporal qualifier . . . such as would make plain" that it refers only to current employees; so too for officers. *Robinson*, 519 U.S. at 341. The Supreme Court was clear that the statute, not a dictionary definition, would show whether former employees were included. *Id.* at 342. But the majority thinks differently, deciding that "[c]ontemporaneous dictionary definitions" indicate that these words somehow operate only in the present tense. Maj. Op. at 9. It is not the substantive definitions, however, but the verb tense used in those definitions that moves the needle for the majority. *Id.* at 9–10. Effectively adding the word "current" to the meaning of "officer" is a big step. Using the tense of a verb imbedded in the definition of a noun to do so is even bigger. *Id.* And that is especially true when the Supreme Court has already rejected incorporating a temporal aspect into the meaning of similar words. *See Robinson*, 519 U.S. at 341–42.

If anything, as Judge Lagoa rightly points out, the language Congress used in § 1521 inherently looks backward in time. *See* Judge Lagoa Dissent at 15. Any violation of this statute is a retaliatory act for something that happened in the past. Section 1521

makes it a crime to file a false lien or encumbrance against "an individual described in section 1114, *on account of* the performance of official duties by that individual." (emphasis added). Though the ordinary meaning of "on account of" is likely intuitively familiar to most English speakers, the dictionary confirms that intuition, defining it to mean "because of."[1] *See On Account Of*, *Oxford English Dictionary* (online edition), https://perma.cc/LG7W-ATCR ("For the sake of, in consideration of; by reason of, because of."). So, in context, the phrase "on account of" centers a criminal's motivation on an earlier action taken by a government official. Section 1521 thus makes it a crime to target an official for an act taken in the past.

The statute recognizes that a perpetrator's retaliatory motive does not end when the official act is complete. Nor does that motivation evaporate when an officer stops being an officer. The backward-looking language of this law, connecting an officer's status to an action taken in the past, thus strongly suggests that the statute's purposes and protections outlast an officer's federal employment.

Still, while only one reading of § 1521 fully incorporates the backward-looking focus of the language, two readings are available: one that includes former officers and one that does not. We

---

[1] I fear that we are over relying on dictionaries when we use them to unpack basic words like these. To be sure, they are often helpful. But not always—and we may risk complicating rather than simplifying a statute's meaning by evaluating minutiae from the definitions of well-understood words.

need other tools to decide which is best, and fortunately the text and structure of § 1521, as well as § 1114, tell us what we need to know.

Section 1114 defines the set of potential targets covered by § 1521. *See* 18 U.S.C. § 1521. This includes "any officer or employee of the United States" and "any person assisting such an officer or employee."[2] 18 U.S.C. § 1114(a). So at least one thing is clear—anyone who is targeted because he formerly assisted an officer qualifies as a victim under the statute. And that is true no matter how long ago that assistance was rendered, and no matter how long ago that officer quit being an officer. Excluding former officers from § 1521 thus introduces an unsustainable illogic into the statute—that people who assisted former federal officers would be protected, but the former officers themselves would not be.

This inconsistency, which the majority consigns to a footnote and terms a "loose interpretive end," cannot be waved away. Maj. Op. at 18 n.3. It is a crucial part of the statute's context and structure. Perhaps realizing the difficulty of sustaining a reading of the statute that contains this illogic, the majority refuses to fully

[2] No one is suggesting that § 1521's reference to "an individual described in § 1114" incorporates "the entirety of § 1114." *Contra* Maj. Op. at 17–18. If it did, the statute would be redundant, since both § 1114 and § 1521 contain the "on account of" language. But both the terms that *are* incorporated from § 1114—including the "person assisting" language discussed in this section—and their immediate context make clear that § 1521 covers former officers.

endorse it. *Id.* But there is no way around this obstacle. And, contrary to the majority's suggestion, the fact that this case does not concern someone who assisted a federal officer is not a license to ignore the problem. *See id.* "In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). Here, we cannot discern the best interpretation of the statute without considering the whole thing, including how its component parts work together.

It would be remarkable to suggest that Congress intended to give greater protections to those who assist federal officers than to the federal officers themselves. So remarkable, in fact, that the majority is unwilling to do so, even though that is the only possible answer if the statute does not protect former officers. And that conclusion becomes more remarkable still when one considers that an individual could both engage in her own official duties *and* assist her coworkers in theirs. *See* Judge Lagoa Dissent at 18. So, under the majority's reading, a retired officer who is targeted for assisting another officer would be protected, but a retired officer who is targeted for doing her own job would not be. That makes no sense.

The majority, to be sure, is not alone in its failure on this front: "Perhaps no interpretive fault is more common than the failure to follow the whole-text canon, which calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts." Antonin Scalia

& Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012). Here, reading "officer" to mean "current officer" violates this canon because it "would cause the provision to clash with another portion of the statute." *Id.* at 168. Considering the entire text of § 1521 and § 1114 thus reveals the folly of limiting the words "employee" and "officer" to the present tense.

In sum, the plain language of § 1521 offers two plausible readings—one that includes former officers and one that does not. But additional statutory context renders one of those meanings "*im*plausible at best"—just as in *Davis* and *Robinson*. *Davis*, 489 U.S. at 810 (emphasis added). The best reading of § 1521, including its text and context, is that its protections extend to former officers as well as current ones. To say otherwise is to ignore the backward-looking language defining the connection between the officer and his acts, the lack of any reason at all to limit the temporally neutral text to current officers, and, perhaps most of all, the obvious illogic introduced by applying the statute to those who assisted former officers but not the former officers themselves.

**II.**

The most persuasive argument to the contrary—at least superficially—comes from two other statutes: 18 U.S.C. § 111 and 18 U.S.C. § 115. Like § 1521, each of these provisions incorporates § 1114 to define its class of potential victims. But they also separately include persons who "formerly" served, which highlights that word's absence in § 1521. Maj. Op. at 13. But can those comparisons really confine our entire view of § 1521? The statutes

cannot bear that weight. Both have distinct textual and structural reasons to include the word "former" that do not apply here. As *Robinson* points out, "that other statutes have been more specific in their coverage of 'employees' and 'former employees' proves only that Congress *can* use the unqualified term 'employees' to refer only to current employees, not that it did so in this particular statute." *Robinson*, 519 U.S. at 341–42 (citations omitted). Here too.

I will start with 18 U.S.C. § 111, which makes it unlawful to assault certain federal officers or employees. Subsection (a)(1) deals with current employees, and subsection (a)(2) with former. But the two are treated separately for a reason: each subsection of the statute criminalizes a different category of conduct. Against a current officer, it is a crime to forcibly assault, resist, oppose, impede, intimidate, or interfere with that person. 18 U.S.C. § 111(a)(1). By contrast, only forcible assault or intimidation qualify against a former officer. *Id.* § 111(a)(2). So the provision for current officers prohibits a much broader swath of conduct that could affect a current officer's ability to carry out his official duties. And that conduct would not affect a former officer because she no longer has any official duties to be resisted, opposed, impeded, or interfered with. Because the conduct prohibited against former officials necessarily fills a smaller bucket than the conduct prohibited against current officials, Congress made a reasonable choice to treat them separately. But in § 1521, exactly the same conduct—filing a false lien—is covered for exactly the same reasons against both current and former officials.

As for 18 U.S.C. § 115, that provision makes it unlawful to impede or retaliate against federal officials by harming, or threatening to harm, the officials or their family members. It specifically references both former officials and the families of former officials, which the majority says means that former officials must be excluded from § 1114 and, by extension, from § 1521. Maj. Op. at 11–13. But if this seemingly duplicative language were reason enough to read former officials out of § 1521, then § 115 would wipe out much more of the statutory scheme. For example, § 115(a)(1)(B) prohibits a variety of conduct against a "United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under" section 1114. Even without breaking down these categories, there appears to be significant overlap between them. But that duplicative language does not narrow the meaning of § 1114; no one is suggesting that § 1114 cannot cover a "United States official" or "a United States judge" or "a Federal law enforcement officer" just because those officers are separately enumerated in § 115. Likewise, the separate enumeration of "former" officers in § 115(a)(2) does not prove that § 1114—as incorporated in § 1521—does not include former officers in its own right.

The statutory history of § 115 also supports this understanding. In its original form, § 115 was entirely silent about "former" officers. Then, it was amended in 1988 to explicitly include protections for former officials' families. *See* Pub. L. No. 100-690, § 6487(f), 102 Stat. 4181, 4386 (1988). The Fifth Circuit at one point considered whether the pre-amendment version of § 115 applied to

former officials. It grounded the conclusion that it did in the statute's backward-looking "on account of" language. *United States v. Raymer*, 876 F.2d 383, 390 (5th Cir. 1989). I think we have seen that phrase before.

The court also found that the 1988 amendment extending protection to the families of former officials provided "strong support" for the conclusion that the original statute "included in its coverage death threats to retired officials for their official acts." *Id.* After all, it would make no sense to cover current officials, the families of current officials, and the families of former officials—but not the former officials themselves. I agree with the Fifth Circuit that the 1988 amendment was a belt-and-suspenders protection for former officials, clarifying what was already covered to ensure that the addition of the family of former officials did not wrongly suggest that former officials themselves were somehow excluded.

That said, it is not at all clear how much—if any—persuasive value we should give to §§ 111 and 115 when interpreting § 1521. They were not passed at the same time. Nor are they part of a unified statutory scheme. That means the majority's approach does not mirror the Supreme Court's analysis in *Robinson*. There, the Court considered how the word "employees" was used in other provisions of Title VII to help reach the conclusion that "employees" meant current and former employees in the relevant provision. *Robinson*, 519 U.S. at 342–45. But Title VII is not a "Title" in the same way as Title 18. Title VII is one cohesive subunit of a single law—the Civil Rights Act of 1964—that was passed at a

particular moment in time, that covers a particular subject matter, and that is completely codified within Chapter 21 of Title 42 of the U.S. Code. So when the Supreme Court considered other uses of the word "employees" in Title VII, it did so in the narrow context of a single Act. Title 18, by contrast, is a sprawling and ever-changing collection of nearly every federal crime, not to mention the rules of federal criminal procedure, spread across hundreds of chapters and countless statutes.

While the use of a term in one part of the Civil Rights Act can shed important light on the meaning of that word in another part of the Act, the same cannot be said of the use (or absence) of a term across the wide number of provisions codified under Title 18—particularly where those provisions were enacted and amended at different times and by different Congresses, each with different goals, intentions, and authors. That's not to say that these comparisons are totally irrelevant, but separate statutes passed at different times do not have the heft to overcome a more natural and less conflict-ridden reading of § 1521, especially when we consider that plenty of other unrelated statutes—like those in *Robinson* and *Davis*—*do* include former as well as current personnel even though they do not use the word former. We should exercise more caution before relying on comparisons between these disjointed provisions to override the more natural and logical reading of § 1521.

* * *

In recent years, this Court—and federal courts around the country—have trended toward the use of textualism to resolve difficult questions of statutory interpretation. And for good reason; the best evidence of a statute's meaning is its text. But textualism does not begin and end with dictionaries. Hypertechnical interpretation can obscure a text's true meaning just as easily as the rightfully rejected purposivist strategies that were more popular in the past. Because the best reading of § 1521 shows that it covers both current and former officials, I respectfully dissent.

LAGOA, Circuit Judge, joined by BRANCH and GRANT, Circuit Judges, Dissenting:

Title 18 U.S.C. § 1521 prohibits, among other things, the filing of a false lien or encumbrance against the property of any officer or employee of the United States "on account of the performance of official duties." In 2018, Timothy Jermaine Pate filed various false liens against Jacob Lew, the former Secretary of the Treasury, and John Koskinen, the former Commissioner of the Internal Revenue Service. There is no dispute that Pate filed the false liens to retaliate against Lew and Koskinen for acts they performed as part of their official duties. The twist here, and what makes this a case of first impression for this Court, is that Pate filed the false liens after Lew and Koskinen had left their positions with the federal government. We are therefore presented with the following question: Does 18 U.S.C. § 1521 apply only to false liens and encumbrances filed against *current* federal officers and employees in retaliation for official actions they performed while in service with the federal government? In other words, does the protection offered by section 1521 vanish once the federal officer or employee retires or otherwise leaves his position? The majority says it does. Because a natural reading of section 1521, in full and in context, protects both current and former federal officers and employees who are retaliated against "on account of the performance of [their] official duties," I respectfully dissent.

**I.**

As with all questions of statutory interpretation, "we begin, as we must, with a careful examination of the statutory text," *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 83 (2017), looking "to the particular statutory language at issue, as well as the language and design of the statute as a whole," *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). Section 1521, the primary statute under review, provides as follows:

> Whoever files, attempts to file, or conspires to file, in any public record or in any private record which is generally available to the public, any false lien or encumbrance against the real or personal property of an individual described in [18 U.S.C.] section 1114, on account of the performance of official duties by that individual, knowing or having reason to know that such lien or encumbrance is false or contains any materially false, fictitious, or fraudulent statement or representation, shall be fined under this title or imprisoned for not more than 10 years, or both.

18 U.S.C. § 1521. As its text conveys, section 1521 imposes liability on certain actions taken against "individuals described in section 1114." *Id.* Section 1521 thereby incorporates section 1114 in part, as several other federal criminal statutes do in ways with various degrees of similarity. *See, e.g.*, 18 U.S.C. §§ 111, 115, 119, 876, 1201.

Section 1114(a) makes it a crime to kill or attempt to kill

> any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or

> on account of the performance of official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that assistance.

Section 1114 therefore protects two categories of individuals: (1) all officers and employees of the United States and (2) all persons assisting such officers or employees in the performance of their official duties. *See United States v. Caniff*, 955 F.3d 1183, 1190 (11th Cir. 2020) ("[W]hen interpreting a statute, 'any' means 'all.' Congress's use of 'any' in [a statute] obliges us to give the [phrase that follows] the broadest interpretation that it will reasonably bear." (citations omitted)). As for the first category of protected individuals, section 1114 makes it a crime to kill or attempt to kill officers or employees of United States "while [they are] engaged in . . . the performance of official duties" or "on account of the performance of official duties."[1] And as for the second category of protected individuals, section 1114 makes it a crime to kill or attempt to kill persons while they are "assisting [officers or employees of the United States] in the performance of [their official] duties" or "on account of [such] assistance." Thus, for both categories, section 1114 imposes

[1] Examples of acts contemplated by section 1114 include attempting to kill a federal prosecutor for an investigation he spearheaded or a case he tried; attempting to kill a Cabinet officer for a policy he implemented; attempting to kill a federal law enforcement officer whose undercover work led to a successful prosecution; and attempting to kill a federal judge for a sentence he imposed or an opinion he authored. Under the majority's interpretation, a federal forum to prosecute such crimes disappears under section 1114 once the individual's tenure in office or term of employment ends.

liability on a defendant when either a temporal element is met, i.e., the defendant acted while the victim was engaged in the performance of official duties or assisting therein, or a causal element is met, i.e., the defendant acted "on account of" the performance of official duties or the assistance therein.

With the text of section 1114 in mind, it is clear that section 1521 prohibits, among other things, the filing of "any false lien or encumbrance against the real or personal property of an ['officer or employee of the United States'], on account of the performance of official duties by that individual." *See* 18 U.S.C. §§ 1114, 1521. Notably, section 1521 contains the same causal element as section 1114, i.e., the "on account of" language, but not the temporal element, i.e., the "while engaged in" language. This makes sense. Unlike an attempt to kill a federal officer or employee, which can occur as an immediate reaction to the performance of official duties, the filing of a lien requires additional time and effort. In the ordinary course, such a filing can be made in retaliation only after the performance of official duties, not simultaneously. Section 1521 therefore addresses retaliatory acts taken against federal officers or employees *after* the performance of their official duties.

As previewed, the question we face today is whether section 1521 stops applying once a federal officer or employee retires or otherwise leaves his federal office or employment. I do not think it does.

**II.**

The majority says that, by its plain terms, section 1521 must stop applying once the relevant federal officer or employee leaves his position. In support, the majority points to various dictionary definitions of the words "officer" and "employee," all of which use the present-tense. Based on those definitions, the majority supposes that section 1521 protects only those who were "officer[s]" or "employee[s]" at the time of the relevant criminal act. *See* Maj. Op. at 9–10. But, in reaching that conclusion, the majority pins the terms "officer" and "employee" to the wrong point in time. What matters, as far as section 1521 is concerned, is not that a victim held a federal position at the time of the defendant's criminal act, but that he held a federal position when he performed the "official duties" for which he eventually faced criminal retaliation.

This interpretation is consistent with how ordinary people use words like "officer" and "employee"; we sometimes use them in a backward-looking sense, pinned to a point in the past. Consider a judge who says, "I have a policy of not writing letters of recommendation for my law clerks." Most ordinary listeners, I think, would assume that the judge does not write letters of recommendation for any current or former law clerks. Alternatively, imagine a soon-to-be groom who says, "I am not going to invite any of my bosses to my wedding." Many would assume that the groom intends to exclude all the bosses that he ever had, as opposed to only all of his current bosses. Lastly, consider a college sophomore who, in complaining about the difficulty of school, says, "All of my professors have assigned work over holiday breaks." Perhaps she means only her current professors, but she

might mean all the professors that she had up until that point. As these examples illustrate, we *sometimes* in the ordinary course of speaking use these sorts of nouns, unaccompanied by any "former" language, to include individuals who formerly qualified as such. And, when we do, context often reveals our intended meaning.[2]

---

[2] The majority poses a hypothetical law that prohibits "any 'officer or employee' of the IRS from taking money from accounting firms." *See* Maj. Op. at 10–11. Would such a law prohibit accountants who previously worked for the IRS from ever accepting a job with a private firm? The answer is likely not. And it most certainly would not if the hypothetical law prohibited "any 'officer or employee' of the IRS from taking money from accounting firms while such officer or employee is engaged in official duties"—in other words, used language similar to that found in section 1114.

My thinking on this is informed, to some degree, by my understanding of the hypothetical law in the context of our real-world conditions. It is exceedingly common for government entities to restrict their current employees from having other jobs and receiving money from third parties, and these restrictions make sense: they help prevent at least the appearance of impropriety among individuals who may be viewed as representatives of the government and possess significant power.

But if the hypothetical law prohibited "any officer or employee of the IRS from taking money from accounting firms on account of the performance of official duties by that individual," the answer is not as obvious. While awkwardly phrased, that hypothetical statute may well be a congressional imposition of a post-employment ethical screen on former IRS officers and employees from receiving compensation or taking employment based on a matter they worked on during their tenure at the IRS. All this is to say that real-world conditions and practices supply information when we consider whether the phrase "officer or employee," as used in the hypothetical law presented, includes former officers and employees. Context necessarily is part of the analysis.

**III.**

The majority seems to agree that "words like 'officer' and 'employee' can sometimes include formers," depending on the context. Maj. Op. at 28; *see also id.* at 25–28. And the Supreme Court certainly holds that they can. As the majority explains, the Supreme Court has twice recognized that such nouns can include formers, first in *Davis v. Michigan Department of Treasury*, 489 U.S. 803 (1989), and then again in *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997).

**A.**

In *Davis*, the question presented was whether retirement benefits paid to former federal employees were covered by 4 U.S.C. § 111(a), which reads as follows:

> The United States consents to [state] taxation of pay or compensation for personal service as an officer or employee of the United States . . . if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation.

The State of Michigan argued that 4 U.S.C. § 111(a) applies only to current employees of the federal government based on the definition of the word "employee" and its use of the present tense. *See* Brief for Appellees, *Davis*, 489 U.S. 803 (No. 87-1020), 1988 WL 1025812, at *38–43. Michigan highlighted the statute's second use of the phrase "officer or employee," which, unlike the first, is not accompanied by any "as"-like lookback (to borrow a term from the majority). *See id.* at *41–42. Michigan thus effectively argued that,

even though the statute's first use of the phrase "officer or employee" is pinned in time to the performance of "personal services" in the past, the statute's second use of the phrase "officer or employee" is not and thereby introduced a current-status requirement. *See id.* The Supreme Court, however, rejected this "hypertechnical reading" of the disputed language "in isolation." *See Davis*, 489 U.S. at 809–10.

The Supreme Court determined that 4 U.S.C. § 111(a)'s two uses of both of the phrases "officer or employee" and "pay or compensation" must mean the same thing and be pinned to the same period of time. *Id.* at 809. In doing so, the Court emphasized the need to read "the words of a statute . . . in their context and with a view to their place in the overall statutory scheme." *Id.* From such a vantage point, the Court found it "difficult to imagine that Congress consented to discriminatory taxation of the pensions of retired federal civil servants while refusing to permit such taxation of current employees." *Id.* at 810. Considering the "implausib[ility]" of such a meaning, the Court concluded that the "overall meaning of [4 U.S.C.] § 111 is unmistakable" and includes both former and current federal employees, even if "Congress could perhaps have used more precise language." *Id.*

*Davis* bears significant relevance to this case. Section 1521's "on account of" language performs the same role as the "personal service" language in 4 U.S.C. § 111(a): both imply a lookback to the

time of federal service.[3] Thus, according to the logic of *Davis*, section 1521's first, incorporated use of the phrase "officer or employee" should mean the same thing and be pinned to the same period of time as the second, implied use of the same phrase. This is consistent with my interpretation of section 1521: both of the non-explicit references to "officer[s] or employee[s]" refer to the point in time when the victim performed his official duties and therefore cover victims who are presently, i.e., at the time of the criminal conduct, no longer "officer[s] or employee[s] of the United States."

Further, as the Supreme Court did with respect to 4 U.S.C. § 111, I find it "implausible" that section 1521 means to exclude former officers and employees. *See Davis*, 489 U.S. at 810. "It is difficult to imagine that Congress" meant to offer protection to current federal officers and employees from retaliatory liens "on account of the performance of [their] official duties," but meant to leave former federal officers and employees out to dry. *Id.*; *see also infra* Section IV.C.

The majority's main explanation for why *Davis* is distinguishable from this case has to do with the order of phrases in the relevant statutes. *See* Maj. Op. at 27–28. In *Davis*, section 111(a) first introduces the phrase "officer or employee" accompanied by

---

[3] It seems clear that the reference to "official duties" is not meant to cover a federal officer or employee's official duties in some unrelated capacity, say, as an officer of a charitable organization in his free time. The reference is tied exclusively to the "officer or employee of the United States" language.

an "as"-like lookback and then uses the phrase again by itself. On the other hand, section 1521 first incorporates the phrase "officer or employee" by itself and then implicitly uses the phrase again with an "as"-like lookback. This, according to the majority, makes all the difference, as "readers naturally understand subsequent phrases in light of antecedent ones." Maj. Op. at 27–28. While that may generally be true, I do not buy that the order of phrases in section 1521 would be so significant to an ordinary reader that he would fail to understand what, in my view, is the clear meaning of the statute.

**B.**

The other relevant Supreme Court case, *Robinson v. Shell Oil Co.*, centered around the question of whether the term "employees," as used in section 704(a) of Title VII of the Civil Rights Act,[4] includes former employees. 519 U.S. at 339. The Court found the term to be "ambiguous as to whether it excludes former employees," since § 704(a) uses neither "former employees" nor "current employees" and does not contain any other "temporal qualifier." *Id.* at 341. In resolving that ambiguity, the Court considered two things: (1) how the term is used elsewhere in Title VII and (2) the primary purpose of section 704(a). *Id.* at 345–46. Both of those considerations individually weighed in favor of including former

---

[4] Section 704(a) "makes it unlawful for 'an employer to discriminate against any of his employees or applicants for employment' who have either availed themselves of Title VII's protections or assisted others in so doing." *Robinson*, 519 U.S. at 339 (quoting 42 U.S.C. § 2000e-3(a)).

employees. As for how the term "employees" is used elsewhere in Title VII, the Court explained that other sections use the term in describing remedial mechanisms for "discriminatory discharge," including "reinstatement." *Id.* at 345. Such mechanisms "would necessarily be brought [only] by a former employee." *Id.* As for the primary purpose of section 704(a), the Court explained that section 704(a) is aimed at offering protection from employment retaliation in order to "[m]aintain[] unfettered access to statutory remedial mechanisms." *Id.* at 346. The Court agreed with the position that reading section 704(a) to exclude former employees would "vitiate much of the protection afforded by [section] 704(a)" and create "a perverse incentive for employers to fire employees who might bring Title VII claims." *Id.* at 345–46. Based on these two congruous considerations, the Court concluded that the term "employees," as used in section 704(a), includes former employees. *See id.* at 346 ("It being more consistent with the broader context of Title VII and the primary purpose of [section] 704(a), we hold that former employees are included within [section] 704(a)'s coverage.").

With respect to the question before us here—i.e., whether the phrase "officer or employee," as incorporated from section 1114(a) by section 1521, includes former officers and employees—*Robinson*, at a high level of generality, certainly reinforces the understanding that terms like "employees" can sometimes include former employees. *See id.* at 341–42, 346. Upon closer inspection, though, *Robinson* presents mixed signals as to whether section 1521's incorporation of the phrase "officer or employee" is former-

inclusive. This is because the two considerations on which the Supreme Court relied in *Robinson* seem to point in different directions in this case.

As for the first *Robinson* consideration, which for our purposes is how the phrase "officer or employee" is used or incorporated by other sections of Title 18, the inclusion of "former[]" language alongside the cross-references to section 1114 in sections 111 and 115, as amended, suggests that the bare cross-reference to section 1114 in section 1521 does not include former officers and employees. *See* 18 U.S.C. § 111(a)(2) (discussing "any person who *formerly* served as a person designated in section 1114" (emphasis added)); *id.* § 115(a)(2) (discussing "member[s] of the immediate family of any person who *formerly* served as a person designated in paragraph (1)," which itself discusses "member[s] of the immediate family of . . . an official whose killing would be a crime under section 1114" (emphasis added)). But a key difference between *Robinson* and this case is that the statute at issue in *Robinson* was part of Title VII of the Civil Rights Act, which is much more cohesive than Title 18 of the U.S. Code.[5] It therefore seems that this first

[5] Title VII is all part of the same act and aimed at addressing the specific issue of employment discrimination. It is a relatively cohesive and interrelated statutory scheme. The same is true of the Consolidated Farm and Rural Development Act, which is entirely aimed at promoting agriculture and which the majority implicitly references by citing *Freemanville Water Sys., Inc. v. Poarch Band of Creek Indians*, 563 F.3d 1205 (11th Cir. 2009). *See* Maj. Op. at 12–13. Title 18 of the U.S. Code, on the other hand, addresses a variety of federal crimes. Although multiple sections of Title 18 cross-reference section 1114 in

consideration carries less weight here, in connection with section 1521 and the rest of Title 18, than it did in *Robinson*, in connection with section 704(a) of Title VII and the rest of Title VII.[6] Accordingly, this point is not dispositive. *See Robinson*, 519 at 341–42 ("[T]hat other statutes have been more specific in their coverage of 'employees' and 'former employees' proves only that Congress *can* use the unqualified term 'employees' to refer only to current employees, not that it did so in this particular statute." (citations omitted)).

As for the second *Robinson* consideration (i.e., the primary statutory purpose), the primary purpose of section 1521 supports interpreting the phrase "officer or employee" to include former officers and employees. This is made clear by the Supreme Court's analysis of 18 U.S.C. § 111 in *United States v. Feola*, 420 U.S. 671 (1975). That statute makes it a crime to assault federal officers and

similar ways, those sections do not share the same level of cohesion as the sections of Title VII.

[6] Moreover, the best indicia of the meaning of the phrase at issue come from the text of sections 1114 and 1521—the two statutes that "provide the field of battle" on which we duel. Maj. Op. at 7; *see infra* Part IV (discussing three contextual indicators in support of a former-inclusive reading of the phrase "officer or employee," all of which are tied to the text of sections 1114 and 1521). This is because that text is closer to the heart of the matter than the text of other statutory sections of Title 18. Indeed, this is consistent with the order of the Supreme Court's analysis in *Robinson*, which first considered whether the statute at issue there contained any plain temporal qualifier, then considered other sections of Title VII, and then considered other statutes altogether. *See Robinson*, 519 U.S. at 341–42.

employees and, as mentioned, is one of the several sections of Title 18 that cross-references section 1114. The Supreme Court recognized that (at least part of) the overall purpose of 18 U.S.C. § 111 is to "protect both federal officers and federal functions" and to provide a federal forum in which to prosecute criminals who retaliate against federal officers. *Feola*, 420 U.S. at 679–84. Upon review of their texts, sections 1114 and 1521 seem to share this described purpose. *See infra* Section IV.C. And interpreting the phrase "officer or employee" to include former officers and employees furthers that purpose more than the majority's interpretation does.

Thus, on balance, *Robinson* favors a former-inclusive reading of section 1521.

* * *

So, to step back and regroup: the Supreme Court has recognized, and everyday experience confirms, that nouns like "officer" and "employee" sometimes include individuals who formerly qualified as such and that we must look to context for an indication one way or the other. And the majority concedes as much. *See* Maj. Op. at 28. Let's now turn to the contextual indicators in support of a former-inclusive interpretation of section 1521.

**IV.**

There are three main contextual indicators that the phrase "any officer or employee of the United States," as incorporated from section 1114(a) by section 1521, includes former officers and employees of the United States or, put differently, is pinned to the

point of time at which the "performance of official duties" occurred.

**A.**

The first contextual indicator in support of a former-inclusive reading of section 1521's incorporation of the phrase "officer or employee" is section 1521's subsequent "on account of" clause. Under a natural reading of section 1521, the "on account of" clause is the key language of the statute. It reveals the law's primary aim: to criminalize the filing of liens *in retaliation for* the performance of official, federal duties.

Critically, the "on account of" clause is backward-looking. We know this because the phrase "on account of," in this context, means "because of." *See Account*, *Oxford English Dictionary* (online ed.) (explaining that the phrase "on account of" means "[f]or the sake of, in consideration of; by reason of, because of")[7]; *see also On Account of Something*, *Cambridge Dictionary* (online ed.).[8] The phrase therefore, by definition, describes something that is responsive to some earlier event or receipt of information. And, as explained above, this phrase is immediately followed by a reference to "official duties," which implicitly conveys an "as"-like lookback in connection with the "officer [or] employee" language. *See supra*

[7] https://www.oed.com/view/Entry/1194?rskey=mcQf6i&result=1&isAdvanced=false#eid213927306 (last visited Oct. 10, 2023).

[8] https://dictionary.cambridge.org/dictionary/english/on-account-of (last visited Oct. 10, 2023).

Section III.A. Moreover, section 1521 does not contain section 1114's temporal element, i.e., the "while engaged in" language; instead, liability hinges on the causal element, i.e., the "on account of" clause (which describes retaliation for the past performance of official duties). *See supra* Part I. All of this strongly indicates that the "officer [or] employee" language similarly is backward-looking and is pinned to the same point of time as the "performance of official duties."

The majority contends that the "on account of" clause "can't expand the scope of [the] phrase ['officer or employee'] beyond its ordinary meaning." Maj. Op. at 16. I agree. But, for the reasons discussed, the phrase has two possible ordinary meanings: one that is former-inclusive and one that is former-exclusive. *See supra* Part II. The "on account of" clause can therefore properly indicate which of those two ordinary meanings applies, without unduly expanding the meaning of any terms.

**B.**

The second contextual indicator in support of a former-inclusive reading of the phrase "officer or employee," as incorporated from section 1114(a), is section 1114(a)'s assisting-party language.

As a refresher, section 1114 offers protection to two categories of individuals: (1) all officers and employees of the United States and (2) all persons assisting such officers or employees in the performance of their official duties. *See* § 1114(a); *see also supra* Part I. Critically, nothing under a plain reading of section 1114(a)'s assisting-party clause suggests that the protection offered to such

parties ends upon the termination of the federal officer or employee's employment. And, as the government has pointed out, it would be "anomalous" to give "greater protection to a private person who once assisted with a single official duty than . . . to a federal official who rendered years of service to the nation." En Banc Br. of Appellee at 22.

The majority concedes that this is "one loose interpretive end," but suggests that "we needn't decide here the temporal scope of [the assisting-party clause]" because this case does not concern any assisting party. *See* Maj. Op. at 18–19 n.3. As I read the assisting-party clause, there isn't much for us to decide: nothing in the clause indicates that the protection offered to assisting-parties ends upon the termination of the federal officer or employee's employment. And, because section 1521 incorporates the phrase "officer or employee" from section 1114(a), we ought to consider section 1114 as a whole—or, at minimum, the entirety of subsection (a). This is called for because the whole text of section 1114 informs the meaning of the particular phrase of section 1114(a) at issue. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 24, at 167 (2012) (explaining that judicial interpreters should consider the whole text of a document because "[c]ontext is a primary determinant of meaning").

Ultimately, the majority says that the legislative decision to offer greater protection to assisting parties, "if only as a means of incentivizing their cooperation," would not be so absurd as to warrant us to rewrite legislation. *See* Maj. Op. at 18–19 n.3. Although

greater protection for assisting parties may not be absurd, I submit that this reading of § 1521 is at least as "implausible" as the State of Michigan's statutory interpretation rejected in *Davis*. *See* 489 U.S. at 810.

This implausibility is especially evident once you consider that an individual might simultaneously qualify as both an "officer or employee of the United States" and a "person assisting such an officer or employee in the performance of [official] duties." § 1114(a). Indeed, there is no explicit indication that those two classes of people are meant to be mutually exclusive. *See id.* So, imagine a federal employee who is part of a team and, in performing his own official duties, assists his coworkers in the performance of their own duties. According to the majority's not-so-absurd reading of section 1114, this hypothetical employee would be entitled to lifelong protection from retaliatory attempts on his life only insofar as they relate to actions he performed that assisted his coworkers; to the extent he worked alone, he would be protected only until he leaves his job. Again, this arrangement seems "implausible," which suggests the alternative is more likely. *See Davis*, 489 U.S. at 810.

In sum, there is no indication in the assisting-party clause of section 1114 that the protection offered to assisting parties is conditioned on the continued employment of the assisted federal officer or employee. This suggests that the more-ambiguous protection offered by section 1114 to federal "officer[s] [and] employee[s]" similarly is not conditioned on their own continued

employment, as otherwise the statute would favor parties who assist federal officers and employees over the federal officers and employees themselves. And there is no reason to think that this suggestion is not equally applicable to section 1521, which incorporates the phrase "officer and employee" as used in section 1114.

**C.**

The third contextual indicator in support of a former-inclusive reading of the phrase "officer or employee" is the shared purpose of sections 1114 and 1521. Of course, it is axiomatic that a statute's purpose "must be derived from the text" itself and "cannot be used to contradict the text" or used alone to justify it. *United States v. Bryant*, 996 F.3d 1243, 1257 (11th Cir. 2021) (quoting *Bellitto v. Snipes*, 935 F.3d 1192, 1201 (11th Cir. 2019)). But a statute's purpose, when derived from the statutory text itself, "is a constituent of meaning and can be helpful in understanding the 'ordinary, contemporary, common meaning' of the statute's language." *Id.* (quoting *United States v. Haun*, 494 F.3d 1006, 1009 (11th Cir. 2007)); *see also* Scalia & Garner, *Reading Law*, *supra*, § 2, at 56–57 ("[W]ords are given meaning by their context, and context includes the purpose of the text. . . . Purpose sheds light . . . on deciding which of various *textually permissible meanings* should be adopted.").

As discussed in Section III.B *supra*, in *Feola*, the Supreme Court recognized that (at least part of) the overall purpose of section 111 is to "protect both federal officers and federal functions" and to provide a federal forum in which to prosecute criminals who retaliate against federal officers. 420 U.S. at 679–84. Section 111

makes it a crime to assault federal officers and employees and, as mentioned, is one of the sections of Title 18 that cross-references section 1114. The text of sections 1114 and 1521, when read in light of *Feola*, have a shared purpose of "protect[ing] both federal officers and federal functions" and providing a federal forum in which to prosecute criminals who retaliate against federal officers. 420 U.S. at 679–84. And, as explained, interpreting the phrase "officer or employee" to include former officers and employees advances that purpose more than the majority's interpretation does. *See supra* Section III.B.

The majority is skeptical of this reasoning. *See* Maj. Op. at 23–24; *see also* Judge Rosenbaum Conc. Op. at 4–5. To be sure, we must be cautious when venturing into the consideration of statutory purpose, since every provision of law "can be said to have a number of purposes, which can be placed on a ladder of abstraction" and easily manipulated both consciously and otherwise. Scalia & Garner, *Reading Law*, *supra*, at 18. But in this case, we apply the Supreme Court's holding in *Feola*, and we need consider that holding only in conjunction with other indicators to decide which of the two textually permissible meanings of the phrase at issue applies. This approach neither "overread[s] *Feola*'s 'federal function' reference" nor improperly subordinates text to purpose. *See* Maj. Op. at 23.

* * *

In sum, the "on account of" clause of section 1521, the assisting-party language of section 1114, and the purpose shared by

both sections (as indicated by their text and Supreme Court precedent) indicate that the phrase "officer or employee of the United States," as incorporated from section 1114 by section 1521, covers former officers and employees. These indicators overcome the arguments to the contrary.

**V.**

Having reviewed the three main contextual indicators in support of a former-inclusive reading of section 1521, there are two other areas that warrant further discussion: the decisions of our sister circuits and the fair warning principle.

**A.**

The majority's interpretation of the phrase "officer or employee" is in tension with the decisions of the two other circuit courts that have addressed substantially similar questions on appeal.

In *United States v. Raymer*, 876 F.2d 383 (5th Cir. 1989), the Fifth Circuit considered whether section 115's cross-reference to the version of section 1114 then in effect covered retirees. *See id.* at 389–91. Notably, section 115, as amended in 1988, explicitly offered protection to the family members of former federal officers but did not explicitly indicate that the former officers themselves were covered. *Id.* at 390. The Fifth Circuit concluded that that disparity was simply the result of Congress "[feeling] no need to state separately in the amendment that retired officials themselves were protected because Congress felt that they already were covered." *Id.* The alternative interpretation, according to the Fifth

Circuit, would compel an "irrational conclusion": "that Congress was concerned about protecting the families of retired officials but had no concern at all about protecting the retired officials themselves." *Id.* The Fifth Circuit also recognized what it described as the "obvious purpose" of section 115: "to free public officials from retaliation for their official acts," a threat that "remains just as inhibiting to proper official acts even after that official retires as it is during his or her active tenure." *Id.* at 391.

About a decade later, in *United States v. Martin*, 163 F.3d 1212 (10th Cir. 1998), the Tenth Circuit followed *Raymer* and held that a local police detective who had previously been "deputized to participate in a federal investigation" but had "stopped working with the FBI" by the time of the criminal act nevertheless constituted a "federal officer" under sections 115 and 1114. *Id.* at 1215. In the alternative, the Tenth Circuit held that the detective qualified as an assisting party. *Id.* The Tenth Circuit has applied *Martin* in two subsequent cases. *See United States v. Holder*, 256 F.3d 959, 964–65 (10th Cir. 2001) ("Actions done in retaliation for official duties even after official duties are completed remain protected by § 115, the court stated [in *Martin*], deriving this result from § 111."); *United States v. Wolff*, 370 F. App'x 888, 895–96 (10th Cir. 2010) ("The logic of *Martin* and *Raymer* compels us to agree with the district court that [18 U.S.C. §] 876(c)'s offense of addressing threatening communications to a government official applies to threatening communications sent to retired government officials on account of the performance of their official duties.").

While the approaches taken by the Fifth and Tenth Circuits differ from the way I analyze § 1521, I neither disagree with the holdings they reached nor believe it necessary to create a circuit split.[9]

**B.**

In promoting its former-exclusive reading of the phrase "officer or employee," the majority mentions that "[c]ourts have long recognized that 'before a man can be punished as a criminal under the Federal law his case must be plainly and unmistakably within the provisions of some statute.'" Maj. Op. at 24 (quoting *United*

[9] The majority takes different approaches to two different discussions of congressional "silence." *Compare* Maj. Op. at 12, *with* Maj. Op. at 21–22. In light of Congress's decision to amend sections 111 and 115 to include "former[]" language, the majority considers Congress's continued inaction with respect to section 1521, i.e., its failure to add similar "former[]" language to section 1521, to be "controlling." *See* Maj. Op. at 12 (quoting *Freemanville*, 563 F.3d at 1209). Conversely, when pointed to Congress's continued inaction in the wake of *Raymer* and *Martin*, both of which support a former-inclusive reading of the phrase at issue here, the majority rejects the suggestion that that inaction conveys any information. *See* Maj. Op. at 21–22. Of course, these two approaches are not necessarily inconsistent, as it is fair to assume that Congress is more likely to be aware of related statutes than the interpretive decisions of our sister courts. *But cf. United States v. Hoy*, 137 F.3d 726, 730 (2d Cir. 1998) (considering the fact that, at the time, "Congress ha[d] apparently made no attempt to circumscribe [the] holdings" of courts that had broadly construed the meaning of "official duties" in determining that an off-duty deputy U.S. Marshal who helped a woman whose purse had been snatched was covered by section 111). As previously discussed, the best indicia of the meaning of the phrase at issue here comes from the text of sections 1114 and 1521—Congress's actual speech on the matter. *See supra* note 6.

*States v. Gradwell*, 243 U.S. 476, 485 (1917)). This is an apparent nod to the fair warning principle of criminal law. *See United States v. Lanier*, 520 U.S. 259, 265 (1997) ("[N]o man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." (quoting *Bouie v. City of Columbia*, 378 U.S. 347, 351 (1964))); *see also* Judge Rosenbaum Conc. Op. at 1–2 (articulating a fair warning concern).

The Supreme Court has recognized "three related manifestations" of the fair warning principle: (1) the vagueness doctrine; (2) the rule of lenity; and (3) the due process requirement of fair disclosure. *Lanier*, 520 U.S. at 266. Fundamentally, "[i]n each of these [manifestations], the touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Id.* at 267.

Putting aside the rule of lenity, which the majority does not invoke and which is inapplicable here,[10] the Supreme Court's decision in *Feola* effectively closed the door for any fair warning argument in this case. As discussed, *Feola* concerned 18 U.S.C. § 111,

[10] We resort to the rule of lenity "only when a criminal statute contains a 'grievous ambiguity or uncertainty,' and 'only if, after seizing everything from which aid can be derived,' [we] 'can make no more than a guess as to what Congress intended.'" *Ocasio v. United States*, 578 U.S. 282, 295 n.8 (2016) (quoting *Muscarello v. United States*, 524 U.S. 125, 138–39 (1998)); *accord United States v. Garcon*, 54 F.4th 1274, 1285 (11th Cir. 2022) (en banc) (recognizing that the rule of lenity applies when there is a "grievous ambiguity"). Because this case does not present a "grievous ambiguity," lenity does not come into play. *See Raymer*, 876 F.2d at 390–91 (concluding similarly that the rule of lenity did not factor into its interpretive analysis of section 115).

the federal statute that criminalizes the act of assaulting an officer or employee of the United States. *See supra* Sections III.B., IV.C.; *see also Feola*, 420 U.S. at 672–73. The defendants in *Feola* had assaulted the buyers on the other end of a drug deal who, unbeknownst to the defendants, were undercover narcotics agents. 420 U.S. at 674–75. At trial, a jury convicted the defendants of assaulting and conspiring to assault federal officers but, on appeal, the Second Circuit reversed on the grounds that knowledge of the victim's official identity is an essential element of conspiracy to assault a federal officer. *Id.* at 675–76. The Supreme Court reversed the Second Circuit's decision and held that neither section 111 nor its related conspiracy statute "require[s] that [the defendant] know the official status of his victim." *Id.* at 687. The federal "officer or employee" requirement incorporated from section 1114, according to the Supreme Court, was a jurisdictional requirement of 18 U.S.C. § 111 and not an element of the substantive offense. *Id.* at 676–77. The Supreme Court explained this in no uncertain terms:

> All [18 U.S.C. § 111] requires is an intent to assault, not an intent to assault a federal officer. . . . This interpretation poses no risk of unfairness to defendants. It is no snare for the unsuspecting. Although the perpetrator of a narcotics 'rip-off,' such as the one involved here, may be surprised to find that his intended victim is a federal officer . . . he nonetheless knows from the very outset that his planned course of conduct is wrongful. The situation is not one where legitimate conduct becomes unlawful solely because of the identity of the individual or agency

> affected. In a case of this kind the offender takes his victim as he finds him. The concept of criminal intent does not extend so far as to require the actor understand not only the nature of his act but also its consequence for the choice of a judicial forum.

*Id.* at 684–85; *see also id.* at 676 n.9.

*Feola*'s reasoning clearly applies to section 1521. Like section 111, section 1521 incorporates section 1114 and concerns conduct that is known to generally be illegal, not "conduct [that] becomes unlawful solely because of the identity of the individual . . . affected." *Feola*, 420 U.S. at 685. Indeed, section 1521's state-law analogues prohibit the filing of false liens generally, and do not depend upon the identity of the victim. *See, e.g.*, Ga. Code § 16-10-20.1. Thus, under *Feola*, it does not matter whether Pate understood his victims to be federal officers or employees as either a factual or legal matter; he needed to "entertain merely the criminal intent to do the act[]," not the intent to do the act to a specific type of person. *Feola*, 420 U.S. at 686. And because Pate had that general intent, he "[took] his victim[s] as he [found them]." *Id.* at 685. It would be inconsistent with *Feola* for Pate to escape liability on the basis of fair notice simply because he may not have known precisely who qualified as a federal "officer or employee" at the time of his unlawful conduct.

**VI.**

Section 1521 makes it a crime to file a false lien against an officer or employee of the United States "on account of" such person's "performance of official duties." The majority says that

section 1521 must only protect *current* officers and employees of the United States. I disagree. Section 1521 protects officers and employees of the United States from retaliatory conduct. And retaliatory conduct can of course occur after officers or employees retire, and that is precisely what happened here. Given the fact that we sometimes use nouns like "officer" and "employee" to include people who formerly qualified as such, I do not think section 1521's incorporation of the phrase "officer or employee" excludes former officers and employees from the statute's protection. After closely analyzing the full text of both section 1521 and the statute from which it borrows the phrase at issue, section 1114, I respectfully dissent and would affirm Pate's convictions on Counts One, Five, Six, and Eight of the Superseding Indictment.

**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

October 11, 2023

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 20-10545-AA
Case Style: USA v. Timothy Pate
District Court Docket No: 1:18-cr-00045-RSB-BWC-1

Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to Rule 36 of the Federal Rules of Appellate Procedure.

Clerk's Office Phone Numbers

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-5 Issuance of En Banc Opinion